BLANK ROME LLP
Dennis M.P. Ehling (SBN 168892)
Ehling@BlankRome.com
1925 Century Park East, 19th Floor
Los Angeles, CA  90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

BLANK ROME LLP
James T. Smith, Esq.
Victor M. Wigman, Esq.
Brian Wm. Higgins, Esq.
Nicholas M. Nyemah, Esq.
600 New Hampshire Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 772-5800

Attorneys for Plaintiff
PACING TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACING TECHNOLOGIES, LLC,<br><br>                    Plaintiff,<br><br>        vs.<br><br>GARMIN INTERNATIONAL, INC.,<br>GARMIN USA, INC. AND GARMIN,<br>LTD.,<br><br>                    Defendant. | Case No.   '12CV1067 BEN JMA<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Jury Trial Demanded |

138531.00601/95074746v.1

**COMPLAINT FOR PATENT INFRINGEMENT**

Pacing Technologies LLC (hereinafter "Plaintiff"), files this Complaint against Garmin Ltd., Garmin International, Inc., and Garmin USA, Inc. (hereinafter "Defendants"), and, in support thereof, further states and alleges as follows:

## THE PARTIES

1.     Plaintiff, Pacing Technologies LLC, is a Delaware limited liability company, having a place of business located at 3425 University Avenue #1177, San Diego, California 92104.

2.     Upon information and belief, Defendant Garmin, Ltd., is a Swiss corporation having its principal place of business located at Mühlentalstrasse 2, 8200 Schaffhausen, Switzerland.  According to Garmin's own published literature, Garmin, Ltd., is a "worldwide provider of navigation, communication and information devices and applications, most of which are enabled by Global Positioning System ("GPS") technology. Garmin designs, develops, manufactures and markets a diverse family of hand-held, portable and fixed-mount GPS-enabled products and other navigation, communications and information products for the automotive/mobile, outdoor, fitness, marine, and general aviation markets."

3.     Upon information and belief, Defendant Garmin International, Inc. is a Kansas corporation, having a place of business located at 1200 East 151st Street, Olathe, Kansas 66062.

4.     Upon information and belief, Defendant Garmin USA, Inc. is a Kansas corporation, having a place of business located at 1200 East 151st Street, Olathe, Kansas 66062.

5.     According to Garmin's published literature, Garmin, Ltd., is the parent corporation of Garmin International, Inc., and Garmin USA, Inc., and owns, directly or indirectly, those operating companies.

6.     Garmin International, Inc., and Garmin USA, Inc., provide marketing support for the sale of Garmin products, and conduct the majority of product design

1

and development work for Garmin products.  Garmin's U.S. consumer product sales are handled through its network of dealers and distributors who are serviced by a staff of regional sales managers and in-house sales associates at those operating companies.

7.    According to Garmin's published literature, Garmin (Asia) Corporation is responsible for manufacturing some or all of the products identified below.  Upon information and belief, Garmin International, Inc., is the importer of record for Garmin's products, including those made by the Garmin (Asia) Corporation.  Upon information and belief, Garmin International, Inc., is the only Garmin entity or operating company identified on U.S. Customs and Border Protection's list of U.S. importers.

## JURISDICTION AND VENUE

8.    This is a civil action for infringement under the laws of the United States, Title 35 United States Code §§ 1, *et seq*.

9.    This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent-exclusive jurisdiction).

10.    Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants, as noted above, have conducted and do conduct business within the Southern District of California.  For example, Defendants use product dealers and distributors in the U.S. to advertise, promote, market, offer to sell, and sell products and services, including Best Buy, Costco, Target, and Wal-Mart, which are located in this judicial district.  One or more Defendants import or cause to be imported infringing products into the United States, including into this judicial district.  Defendants make available, advertise, and promote a web service called Garmin Connect available via the Internet to residents of this judicial district.

11.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as Defendants are subject to personal jurisdiction in this judicial district.

2
**COMPLAINT FOR PATENT INFRINGEMENT**

# FACTUAL BACKGROUND

### A.    Inventor

12.    Inventor William D. Turner is the CEO and founder of Plaintiff, Pacing Technologies LLC, a company that develops and provides software applications ("apps") and web services enabling mobile devices using patented proprietary technology.  In July 2011, the company launched its PaceDJ app for the iPhone, which is designed to help runners, walkers and cyclists synchronize their pace with the tempo of songs.

### B.    U.S. Patent No. 8,101,843

13.    On January 24, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,101,843 ("the '843 Patent"), entitled "System and Method for Pacing Repetitive Motion Activities."  Mr. Turner is named as the sole inventor on the patent.  A true and correct copy of the '843 Patent is attached hereto as Exhibit A.  As indicated on the front of the '843 Patent, the '843 Patent is based on U.S. Patent Application Serial No. 12/916,869.  That application is a continuation of and claims the benefit of U.S. Patent Application Serial No. 11/244,241, filed Oct. 6, 2005, now U.S. Pat. No. 7,825,319.

14.    Plaintiff, Pacing Technologies LLC, is the owner by assignment of the '843 Patent.

15.    The claims of the '843 Patent relate to, *inter alia*, a system and method that facilitate a user using a web service to pre-select and designate activities and a target pace or tempo used in repetitive motion activities such as, but not limited to, running, walking, swimming, cycling, aerobics, and the like, store such information, and transfer activity- or pace/tempo-related information between the web service and a portable, GPS-enabled device that displays some of that information to the user.

3
**COMPLAINT FOR PATENT INFRINGEMENT**

## COUNT I

### Infringement of the '843 Patent

16.     Plaintiff incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

17.     Upon information and belief, Defendants' business is predicated in part on their making, using, selling, offering for sale, and/or importing into the United States a variety of products and services covered by the '843 Patent including, but not limited to, portable, GPS-enabled devices called "FR", "Forerunner," and "Edge", a web service called Garmin Connect, and a smart phone app called Garmin Fit.  Those actions—making, using, selling, offering for sale, and importing—are performed by one or more of the Defendants in this judicial district and across the United States.

18.     As stated in Garmin's published literature, the FR/Forerunner products are "Compact, lightweight training assistants for athletes with integrated GPS sensor (except for the FR60 and FR 70 fitness watches) that provide time, speed, distance, pace and other data. Some models also offer a heart rate monitoring function. The FR 60 and FR70 are entry-level advanced fitness watches that allow runners and walkers to track their workouts and automatically upload their data (via a wireless USB ANT™ Stick) to a personal computer. The Forerunner 405 is a compact-sized, wrist-worn GPS-enabled device that allows runners and joggers to track their speed, distance, heart rate and location, access their training history or challenge a Virtual Partner™ and automatically upload their data wirelessly to a personal computer. The Forerunner 405CX adds heartrate based calorie computation and improved comfort to the numerous features available on the Forerunner 405. The Forerunner 410 offers an enhanced touch bezel designed to allow users to quickly scroll and select features on the run. The Forerunner 610 is Garmin's first ever touch-screen fitness watch and it also adds the new Virtual Racer™, which allows runners to race against their previous best times, using data stored on the watch. The Forerunner 310XT model, which was designed specifically for triathletes, is water-resistant to 50m and tracks biking and

running data (and optional heart rate data). In October 2011, Garmin announced the Forerunner 910XT, which is the only all-in-one GPS-enabled device that provides detailed swim metrics and tracks distance, speed/pace, elevation and heart rate for running and cycling. Designed for both open water and pool swimming, Forerunner 910XT is water resistant to 50 meters and is Garmin's first multisport watch to offer extensive swim metrics, including swim distance, stroke identification, stroke count and pool lengths."

19.   As also stated in Garmin's published literature, the Edge products are "Integrated personal training systems designed for cyclists. The Edge 200 measures speed, distance, time, calories burned, climb and descent, altitude and more. The Edge 500 is geared toward performance-driven cyclists and tracks the cyclist's distance, speed, location and elevation with high sensitivity GPS, and also tracks the cyclist's heart rate with an optional heart rate monitor (sold separately). The newest model, the Edge 800, added a touchscreen interface to the Edge family of products."

20.   As also stated in Garmin's published literature, "In October 2011, Garmin announced Garmin Fit for iPhone and Android, Garmin's first fitness app that lets users track metrics such as speed, pace, distance, time, calories, and with optional Garmin accessories displays heart rate and cadence. Garmin Fit also maps and automatically uploads workouts to Garmin's Garmin Connect, which is Garmin's website where users can track their workout data."

21.   Upon information and belief, Defendants have, under 35 U.S.C. § 271, by way of the above-mentioned actions in this judicial district, infringed, and will continue to infringe, the '843 Patent, by, *inter alia*, making, using, selling, offering for sale, and/or importing into the United States the above-mentioned products and web services covered by the '843 Patent, and distributing, marketing, and/or advertising those products and web services covered by the '843 Patent in this judicial district and elsewhere in the United States.

22.     As a direct and proximate result of Defendants' acts of infringing the '843 Patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, in no event less than a reasonable royalty to compensate for Defendants' infringement.

23.     Upon information and belief, Defendants have knowingly, willfully, and deliberately infringed the '843 Patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

24.     Upon information and belief, Defendants will continue to infringe the '843 Patent, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling, offering for sale, and importing as mentioned above.

25.     Upon information and belief, the infringement of the '843 Patent by Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff would have made or would enjoy in the future; has injured Plaintiff in other respects; and will cause Plaintiff added injury and damage unless Defendants are enjoined from infringing the '843 Patent on all products and web services Defendants will make, use, offer for sale, sell, import, distribute, market, or advertise until the expiration of the '843 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Pacing Technologies LLC, respectfully requests this Court to:

A.     Enter judgment for Plaintiff that the '843 Patent was duly and legally issued, is valid, enforceable, and has been infringed, directly or indirectly, by Defendants;

B.     Enter judgment for Plaintiff that Defendants have willfully infringed, and are willfully infringing, one or more claims of the '843 Patent;

C.     Order Defendants to account in written form for and to pay to Plaintiff actual damages to compensate Plaintiff for Defendants' infringement of the '843 Patent through and including the date of entry of the judgment on the jury's verdict, including but not limited to, damages of no less than a reasonable royalty, together with interest and costs under 35 U.S.C. §284, and further order that such damages be trebled due to Defendants' deliberate, willful, and knowing conduct;

D.     Issue a preliminary injunction restraining the Defendants, their directors, officers, agents, employees, successors, subsidiaries, assigns, affiliates and all persons acting in privity or in concert or participation with any of them from the continued infringement, direct or contributory, or active inducement of infringement by others, of the '843 Patent;

E.     Issue a permanent injunction restraining the Defendants, their directors, officers, agents, employees, successors, subsidiaries, assigns, affiliates and all persons acting in privity or in concert or participation with any of them from the continued infringement, direct or contributory, or active inducement of infringement by others, of the '843 Patent;

F.     Direct Defendants to file with this Court, and to serve on Plaintiff, a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

G.     In lieu of a permanent injunction, order the Defendants to pay to Plaintiff monetary damages that will be suffered as a result of Defendants' continuing post-verdict infringement of the '843 Patent by requiring the Defendants to take a compulsory license at a reasonable royalty rate to be determined by the Court on all products that Defendants make, use, offer for sale, sell, import, distribute, market, or advertise that infringe the '843 Patent until the expiration of the '843 Patent, which royalty payments shall commence three months after entry of the judgment and shall be made quarterly thereafter, and shall be accompanied by an accounting of the sales of infringing products by the Defendants;

H.     Order such other measures in the form of audit rights, interest on late payments, and appropriate security to protect Plaintiff's rights;

I.     Order Defendants to pay Plaintiff its costs, expenses, and fees, including reasonable attorneys' fees pursuant to 35 U.S.C. § 285, and pre-judgment and post-judgment interest at the maximum rate allowed by law; and

J.     Grant Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that the issues in this case be tried by a jury.

Dated:  May 1, 2012                Respectfully submitted,


                                   */s/ Dennis M.P. Ehling*
                                   Dennis M.P. Ehling, Esq.
                                   BLANK ROME LLP
                                   1925 Century Park East, Ste. 1900
                                   Los Angeles, CA 90067
                                   Telephone: (424) 239-3400
                                   Facsimile: (424) 239-3480
                                   E-mail: ehling@blankrome.com

                                   **ATTORNEY FOR PLAINTIFF**
                                   **PACING TECHNOLOGIES LLC**

**OF-COUNSEL FOR PLAINTIFF**
**PACING TECHNOLOGIES LLC:**
James T. Smith, Esq.
Victor M. Wigman, Esq.
Brian Wm. Higgins, Esq.
Nicholas M. Nyemah, Esq.
BLANK ROME LLP
Watergate
600 New Hampshire Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 772-5800
Facsimile:   (202) 772-5858
E-mail:  Wigman@blankrome.com
E-mail:  Smith-JT@blankrome.com
E-mail:  Higgins@blankrome.com
E-mail:  Nyemah@blankrome.com

≪JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Pacing Technologies, LLC | Garmin International, Inc., Garmin USA, Inc., and Garmin, Ltd. |

**(b)**  County of Residence of First Listed Plaintiff  **San Diego**
(EXCEPT IN U S  PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U S  PLAINTIFF CASES ONLY)
NOTE·  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Blank Rome, LLP, 1925 Century Park East, 19th Floor, Los Angeles, CA, 90067 (424) 239-3400

Attorneys (If Known)

**'12CV1067 BEN JMA**

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) |
|---|---|

(For Diversity Cases Only)

| | | | | PTF | DEF | | | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|---|---|
| ❒ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) | | | Citizen of This State | ❒ 1 | ❒ 1 | Incorporated or Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| ❒ 2 | U S  Government Defendant | ❒ 4 | Diversity (Indicate Citizenship of Parties in Item III) | | | Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated and Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| | | | | | | Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 610 Agriculture | ❒ 422 Appeal 28 USC 158 | ❒ 400 State Reapportionment |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 362 Personal Injury - | ❒ 620 Other Food & Drug | ❒ 423 Withdrawal | ❒ 410 Antitrust |
| ❒ 130 Miller Act | ❒ 315 Airplane Product | Med  Malpractice | ❒ 625 Drug Related Seizure | 28 USC 157 | ❒ 430 Banks and Banking |
| ❒ 140 Negotiable Instrument | Liability | ❒ 365 Personal Injury - | of Property 21 USC 881 | | ❒ 450 Commerce |
| ❒ 150 Recovery of Overpayment | ❒ 320 Assault, Libel & | Product Liability | ❒ 630 Liquor Laws | **PROPERTY RIGHTS** | ❒ 460 Deportation |
| & Enforcement of Judgment | Slander | ❒ 368 Asbestos Personal | ❒ 640 R R  & Truck | ❒ 820 Copyrights | ❒ 470 Racketeer Influenced and |
| ❒ 151 Medicare Act | ❒ 330 Federal Employers' | Injury Product | ❒ 650 Airline Regs | ☒ 830 Patent | Corrupt Organizations |
| ❒ 152 Recovery of Defaulted | Liability | Liability | ❒ 660 Occupational | ❒ 840 Trademark | ❒ 480 Consumer Credit |
| Student Loans | ❒ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❒ 490 Cable/Sat TV |
| (Excl  Veterans) | ❒ 345 Marine Product | ❒ 370 Other Fraud | ❒ 690 Other | | ❒ 810 Selective Service |
| ❒ 153 Recovery of Overpayment | Liability | ❒ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❒ 350 Motor Vehicle | ❒ 380 Other Personal | ❒ 710 Fair Labor Standards | ❒ 861 HIA (1395ff) | Exchange |
| ❒ 160 Stockholders' Suits | ❒ 355 Motor Vehicle | Property Damage | Act | ❒ 862 Black Lung (923) | ❒ 875 Customer Challenge |
| ❒ 190 Other Contract | Product Liability | ❒ 385 Property Damage | ❒ 720 Labor/Mgmt  Relations | ❒ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❒ 195 Contract Product Liability | ❒ 360 Other Personal | Product Liability | ❒ 730 Labor/Mgmt Reporting | ❒ 864 SSID Title XVI | ❒ 890 Other Statutory Actions |
| ❒ 196 Franchise | Injury | | & Disclosure Act | ❒ 865 RSI (405(g)) | ❒ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❒ 892 Economic Stabilization Act |
| ❒ 210 Land Condemnation | ❒ 441 Voting | ❒ 510 Motions to Vacate | ❒ 790 Other Labor Litigation | ❒ 870 Taxes (U S  Plaintiff | ❒ 893 Environmental Matters |
| ❒ 220 Foreclosure | ❒ 442 Employment | Sentence | ❒ 791 Empl. Ret  Inc. | or Defendant) | ❒ 894 Energy Allocation Act |
| ❒ 230 Rent Lease & Ejectment | ❒ 443 Housing/ | **Habeas Corpus:** | Security Act | ❒ 871 IRS—Third Party | ❒ 895 Freedom of Information |
| ❒ 240 Torts to Land | Accommodations | ❒ 530 General | | 26 USC 7609 | Act |
| ❒ 245 Tort Product Liability | ❒ 444 Welfare | ❒ 535 Death Penalty | **IMMIGRATION** | | ❒ 900 Appeal of Fee Determination |
| ❒ 290 All Other Real Property | ❒ 445 Amer  w/Disabilities - | ❒ 540 Mandamus & Other | ❒ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❒ 550 Civil Rights | ❒ 463 Habeas Corpus - | | to Justice |
| | ❒ 446 Amer  w/Disabilities - | ❒ 555 Prison Condition | Alien Detainee | | ❒ 950 Constitutionality of |
| | Other | | ❒ 465 Other Immigration | | State Statutes |
| | ❒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| ☒ 1 Original Proceeding | ❒ 2 Removed from State Court | ❒ 3 Remanded from Appellate Court | ❒ 4 Reinstated or Reopened | ❒ 5 Transferred from another district (specify) | ❒ 6 Multidistrict Litigation | ❒ 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity).**
35 USC Sections 1, et. seq.

Brief description of cause
Patent Infringement

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:**   ☑ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 05/01/2012 | /s/ Dennis M. P. Ehling |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

# EXHIBIT A

Case 3:12-cv-01067-BEN-DHB   Document1  Filed 04/30/12  Page 1 of 31

US008101843B2

(12) **United States Patent**     (10) **Patent No.:**    **US 8,101,843 B2**

Turner           (45) **Date of Patent:**      **Jan. 24, 2012**

(54) **SYSTEM AND METHOD FOR PACING REPETITIVE MOTION ACTIVITIES**

(75) Inventor: **William D. Turner**, San Diego, CA (US)

(73) Assignee: **Pacing Technologies LLC**, San Diego, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/916,869**

(22) Filed: **Nov. 1, 2010**

(65) **Prior Publication Data**

US 2011/0061515 A1     Mar. 17, 2011

**Related U.S. Application Data**

(63) Continuation of application No. 11/244,241, filed on Oct. 6, 2005, now Pat. No. 7,825,319.

(51) **Int. Cl.**
*G10H 7/00*        (2006.01)

(52) **U.S. Cl.** ............................................. **84/612**; 482/3

(58) **Field of Classification Search** .................... 84/612; 700/94; 482/900, 901, 3–9
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,164,732 A | | 8/1979 | Pischiera |
| 4,337,529 A | * | 6/1982 | Morokawa ...................... 377/20 |
| 4,413,821 A | | 11/1983 | Centafanti |
| 4,660,107 A | | 4/1987 | Chippendale, Jr. |
| 4,776,323 A | | 10/1988 | Spector |
| 4,788,983 A | * | 12/1988 | Brink et al. ................... 600/547 |
| 4,969,384 A | | 11/1990 | Kawasaki et al. |
| 5,137,501 A | | 8/1992 | Mertesdorf |

| | | | |
|---|---|---|---|
| 5,215,468 A | * | 6/1993 | Lauffer et al. ................ 434/236 |
| 5,267,942 A | * | 12/1993 | Saperston ........................ 600/28 |
| 5,343,871 A | | 9/1994 | Bittman et al. |
| 5,451,922 A | | 9/1995 | Hamilton |
| 5,592,143 A | * | 1/1997 | Romney et al. ......... 340/309.16 |
| 5,662,117 A | | 9/1997 | Bittman |
| 5,830,107 A | | 11/1998 | Brigliadoro |
| 5,869,783 A | | 2/1999 | Su et al. |
| 6,013,007 A | * | 1/2000 | Root et al. ........................ 482/8 |
| 6,036,573 A | | 3/2000 | Huang |
| 6,185,527 B1 | | 2/2001 | Petkovic et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| JP | 2001306071 A | 11/2001 |
|---|---|---|

(Continued)

OTHER PUBLICATIONS

Author Unknown, "Natural Health Web—Music and Sound Therapy Information," pp. 1-8, accessed on Jun. 17, 2009 at www.naturalhealthweb.com/topics/subtopics/music & sound therapy.html.

(Continued)

*Primary Examiner* — Jeffrey Donels

(74) *Attorney, Agent, or Firm* — Blank Rome LLP

(57) **ABSTRACT**

Disclosed is a system and method that allows users to customize audible and visible signals, such as music or video, to maintain a pre-determined or specified pace or to achieve a new pace in repetitive motion activities such as, but not limited to, running, walking, swimming, cycling, aerobics, and the like. Other applications of the system and method include, but are not limited to, enhancing the results of medical rehabilitation programs, physical therapy, weight loss programs, disc jockey services, and industries or manufacturing settings where repetitive motion is common and where audible cues designed to help users maintain a consistent pace are useful.

**37 Claims, 7 Drawing Sheets**



**US 8,101,843 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,230,047 | B1 * | 5/2001 | McHugh ........................ 600/519 |
| 6,232,540 | B1 | 5/2001 | Kondo |
| 6,244,988 | B1 | 6/2001 | Delman |
| 6,246,362 | B1 * | 6/2001 | Tsubata et al. ........... 342/357.35 |
| 6,312,363 | B1 | 11/2001 | Watterson et al. |
| 6,448,485 | B1 | 9/2002 | Barile |
| 6,571,248 | B1 | 5/2003 | Kusama |
| 6,572,511 | B1 * | 6/2003 | Volpe .................................. 482/4 |
| 6,605,020 | B1 | 8/2003 | Huang |
| 6,607,493 | B2 * | 8/2003 | Song ............................... 600/502 |
| 6,623,427 | B2 * | 9/2003 | Mandigo ........................ 600/300 |
| 6,625,541 | B1 | 9/2003 | Shenoy et al. |
| 6,626,799 | B2 | 9/2003 | Watterson et al. |
| 6,629,101 | B1 | 9/2003 | Enokida |
| 6,716,139 | B1 | 4/2004 | Hosseinzadeh-Dolkhani et al. |
| 6,746,247 | B2 | 6/2004 | Barton |
| 6,808,473 | B2 * | 10/2004 | Hisano et al. ...................... 482/8 |
| 6,837,827 | B1 | 1/2005 | Lee et al. |
| 7,003,122 | B2 * | 2/2006 | Chen ................................ 381/67 |
| 7,177,672 | B2 * | 2/2007 | Nissila ........................... 600/519 |
| 7,207,935 | B1 * | 4/2007 | Lipo ............................... 600/28 |
| 7,224,282 | B2 | 5/2007 | Terauchi et al. |
| 7,572,205 | B1 | 8/2009 | Cribar |
| 7,586,032 | B2 | 9/2009 | Louis |
| 2001/0003542 | A1 * | 5/2001 | Kita ............................... 381/334 |
| 2002/0091049 | A1 * | 7/2002 | Hisano et al. ................. 482/148 |
| 2002/0091796 | A1 * | 7/2002 | Higginson et al. ............ 709/218 |
| 2003/0066413 | A1 | 4/2003 | Nishitani et al. |
| 2003/0139254 | A1 | 7/2003 | Chang |
| 2004/0127335 | A1 | 7/2004 | Watterson et al. |
| 2004/0257432 | A1 | 12/2004 | Girish et al. |
| 2004/0263337 | A1 | 12/2004 | Terauchi et al. |
| 2005/0049113 | A1 * | 3/2005 | Yueh et al. ........................ 482/8 |
| 2005/0126370 | A1 * | 6/2005 | Takai et al. ...................... 84/636 |
| 2005/0129253 | A1 * | 6/2005 | Chen ................................ 381/67 |
| 2005/0141729 | A1 * | 6/2005 | Kanzaki et al. ................. 381/67 |
| 2005/0201572 | A1 | 9/2005 | Lindahl et al. |
| 2005/0266961 | A1 | 12/2005 | Shum et al. |
| 2005/0288154 | A1 | 12/2005 | Lee et al. |
| 2006/0067535 | A1 | 3/2006 | Culbert et al. |
| 2006/0067536 | A1 | 3/2006 | Culbert et al. |
| 2006/0084551 | A1 * | 4/2006 | Volpe, Jr. ............................ 482/8 |
| 2006/0102171 | A1 * | 5/2006 | Gavish ......................... 128/95.1 |
| 2006/0107822 | A1 * | 5/2006 | Bowen ............................ 84/612 |
| 2006/0111621 | A1 * | 5/2006 | Coppi et al. ................... 600/300 |
| 2006/0136173 | A1 | 6/2006 | Case et al. |
| 2006/0153040 | A1 | 7/2006 | Girish et al. |
| 2006/0169125 | A1 * | 8/2006 | Ashkenazi et al. ............. 84/612 |
| 2006/0185502 | A1 | 8/2006 | Nishitani et al. |
| 2006/0221788 | A1 | 10/2006 | Lindahl et al. |
| 2006/0243120 | A1 * | 11/2006 | Takai et al. ...................... 84/612 |
| 2006/0253210 | A1 | 11/2006 | Rosenberg |
| 2006/0262120 | A1 | 11/2006 | Rosenberg |
| 2006/0274905 | A1 | 12/2006 | Lindahl et al. |
| 2006/0276919 | A1 * | 12/2006 | Shirai et al. ...................... 700/94 |
| 2006/0288846 | A1 * | 12/2006 | Logan ............................. 84/612 |
| 2007/0044641 | A1 * | 3/2007 | McKinney et al. ............. 84/612 |
| 2007/0060446 | A1 * | 3/2007 | Asukai et al. ................... 482/8 |
| 2007/0074617 | A1 | 4/2007 | Vergo |
| 2007/0074618 | A1 * | 4/2007 | Vergo ............................. 84/612 |
| 2007/0074619 | A1 * | 4/2007 | Vergo ............................. 84/612 |
| 2007/0149362 | A1 | 6/2007 | Lee et al. |
| 2007/0208544 | A1 | 9/2007 | Kulach et al. |
| 2007/0288157 | A1 | 12/2007 | Peterman |
| 2008/0096727 | A1 | 4/2008 | Lee et al. |
| 2008/0143547 | A1 | 6/2008 | Burrell et al. |
| 2008/0153671 | A1 | 6/2008 | Ogg et al. |
| 2008/0190202 | A1 | 8/2008 | Kulach et al. |
| 2008/0214358 | A1 | 9/2008 | Ogg et al. |
| 2008/0214360 | A1 | 9/2008 | Stirling et al. |
| 2009/0063049 | A1 | 3/2009 | Swisher et al. |
| 2009/0076765 | A1 | 3/2009 | Kulach et al. |
| 2009/0192391 | A1 | 7/2009 | Lovitt et al. |
| 2009/0295596 | A1 | 12/2009 | Downey et al. |
| 2010/0009811 | A1 | 1/2010 | Lee et al. |
| 2011/0022349 | A1 | 1/2011 | Stirling et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 2001346928 A | 12/2001 |
| JP | 2002073018 A | 3/2002 |
| JP | 2002140080 A | 5/2002 |
| JP | 2003085888 A | 3/2003 |
| JP | 2003108154 A | 9/2003 |
| JP | 2003305146 A | 10/2003 |
| JP | 2004113552 A | 4/2004 |
| JP | 2004302011 A | 10/2004 |
| JP | 2003177750 A | 1/2005 |

OTHER PUBLICATIONS

Sundquist, "Exercise Pacing & Use of Music," Nov. 3, 1999, 7 pp.
Underhill, et al., MP3: Complete Idiots Guide to MP3, UCSD Library, ML 74.4 M6 U 64, 2000, S&E Stacks.
Hart, et al., MP3: I Didn't Know You Could Do That, UCSD Library, ML 74.4 M6 H 37, 1999, S&E Stacks.
Hacker, MP3: The Definitive Guide, ML 74.4 M6 H 33, 2000, S&E Stacks.
Author Unknown, "ID3.org," 2 pp., most recently accessed on Jun. 6, 2011 at http://www.id3.org/.
English translation of JP2003305146.

* cited by examiner

Case 3:12-cv-01067-BEN-DHB   Document 1   Filed 05/01/12   Page 14 of 31



FIG. 1



FIG. 6

FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 7



FIG. 8



FIG. 9





FIG. 10



FIG. 11



**FIG. 12**



**FIG. 13**



FIG. 14



FIG. 15



FIG. 16



FIG. 17

US 8,101,843 B2

1

## SYSTEM AND METHOD FOR PACING REPETITIVE MOTION ACTIVITIES

### CROSS-REFERENCE TO RELATED APPLICATION

The present application is a continuation of and claims the benefit of U.S. patent application Ser. No. 11/244,241, filed Oct. 6, 2005, now U.S. Pat. No. 7,825,319 the entire disclosure of which is incorporated by reference herein.

### BACKGROUND OF THE INVENTION

1. Field of Invention

The present invention relates generally to systems and/or methods for pacing individuals involved in repetitive motion activities to achieve an optimal or desired performance goal, in particular, the present invention relates to hardware and software systems and methods that allow individuals involved in repetitive motion activities such as running, walking, swimming, cycling, aerobics, and the like, to select and use audible or visible information characterized by tempos that match the individuals' repetitive activity tempo to increase the chances of reaching an optimal active level and complete an active within a desired time period.

2. Description of Related Art

Devices for use by individuals engaged in repetitive motion activities, such as athletes, laborers, and artists, are known in the art. U.S. Pat. No. 4,164,732, for example, discloses a pacing device involving a portable frequency generator adapted to be worn by an athlete, that emits audible tone bursts at selectable time intervals. The patent teaches that the device is used to train individuals, such as runners, to achieve a desired time goal for whatever repetitive motion activity they are involved in.

There are many types of audible sounds that can be used for pacing an individual, including, simple tone bursts, as described above, the ticking of a metronome, and the tempo of music, to name a few. U.S. Pat. No. 5,215,468, for example, discloses an apparatus for modifying the tempo of a musical piece and the output of an associated amplification device as a motivational tool for joggers. The invention uses an adjustable drive motor to incrementally increase the rate at which the musical piece is played by the device, which is disclosed as being a subliminal change not noticed by the user. The patent discloses that the invention may be used by marathoners and disc jockeys.

Pacing tools can be used to optimize the performance of an individual engaged in a repetitive motion activity once the individual's optimal or desired pace is known or determined, U.S. Pat. No. 6,716,247, for example, discloses a method for producing an instructional tool for an athlete that teaches the athlete appropriate rhythm, timing, and tempo by using the athlete's own best performance as a template to compose a new musical piece (as opposed to modifying an existing musical piece) having a specific tempo. The patent discloses that the athlete's tempo is analyzed as he performs an activity, and then a song is composed having a tempo that matches the tempo of the analyzed activity and that achieves an optimal level of performance of the athlete. The patent discloses that software may be used to modify the athlete's choice of musical piece, to include modifying the tempo of the musical piece and inserting pre-recorded notes or sounds, such as a metronome beat, into the musical piece. An audio file player may be used to play back the tempo-modified musical piece to the athlete.

2

In addition to those pacing devices, other pacing systems incorporate information about the individual, his or her location, and the type of activity involved to further personalize and enhance the ability of the individual performing the repetitive motion activity. Japanese Patent Publication 2004-113552, for example, discloses an exercise aid device capable of informing an exercising individual of an appropriate walking tempo. The disclosed device calculates a walking pitch based on physical information of the exercising individual and information about the course being walked. The device displays a list of music pieces having a tempo nearly matching the individual's tempo, changes the tempo of a selected musical piece to match the calculated tempo, and plays the tempo-modified musical piece as the individual performs the activity.

Japanese Patent Publication 2003-108154 discloses a device and method for distributing music having a known tempo (called a "load speed") to a user based on received activity patterns heart rate) relayed from a terminal device associated with the user to a distribution device that selects, and downloads to the user a musical piece from a database of musical pieces having a known tempo. The device and method are intended to facilitate an optimal level of exercise by encouraging the user to exercise at the tempo of the musical piece such that the user's heart rate is maintained as close to a pre-determined heart rate as possible. The reference does not disclose modifying the tempo of the music pieces in the database.

Because different individuals perform at different levels of peak intensity for the same repetitive task, audible pacing tools have been altered in order to reflect each individual's movements. Where the pacing tool is music, an audible tone may be added to existing music or the beats per minute of the music may be altered. U.S. Pat. No. 6,448,485, for example, discloses digitally adding audible information to an existing digital music data files.

What the aforementioned prior art systems and methods fail to address, however, is the need for a system and method thr pacing individuals involved in repetitive motion activities that involves a plurality of user profiles and accessible music data files maintained by a networked server in data communication with a plurality of users' electronic devices, each of the devices adapted to providing automatic location information to the server and outputting audio and video information that the users can employ for pacing purposes.

### SUMMARY AND OBJECTS OF THE INVENTION

It should be apparent that there exists a need for a computer-implemented system and method for providing to repetitive activity users over a wired or wireless communications network, like the Internet, music pieces or tempo-modified music pieces that are stored on a server system in data communication with an audio or video playback device operated by the user for pacing purposes, the music pieces being automatically or manually downloaded based on information in a plurality of individual user profiles stored on the server system. There also exists a need for a system and method that uses mapping and global positioning system (GPS) telemetry data tied to the audio or video playback device and server system that automatically selects tempo-adjusted music or adjusts the tempo of current music piece being played as a user performs a repetitive motion activity. The advantages of the present invention include: maintaining a large catalogue of audio and video data files that are constantly being updated and available to users; providing easy accessibility and down-

US 8,101,843 B2

3

loading of information files using Internet Protocol-enabled devices (or using other information distribution protocols); automatically providing location-based information about the user without the need for different networked devices; allowing for storing and analyzing information in user profiles to enhance the information provided by the system; and having the ability to analyze patterns and habits of users accessing the system.

Accordingly, it is a principal object of the present invention to provide a computer-implemented, network-based system having a networked server, database, client computer, and input/output device for use by individuals engaged in repetitive motion activities, and a method of using the same by those individuals to achieve their time-based and/or pace-based goals for completing repetitive motion activities.

It is another object of the present invention to provide an Internet-based system to deliver system-provided services. However, the invention contemplates using existing portable audio devices, modification of existing portable audio devices, file sharing networks, on-demand radio or television services, cable services, cable television service, satellite radio or television, software programs, cellular phone, cellular phone network, or other devices, networks, software or systems used in place of or in association with an Internet-based system to alter the tempo of music and distribute or sell such music for the purpose of pacing repetitive motion activities.

It is still another object of the present invention to provide a software program specifically designed to allow users to modify the tempo or beats-per-minute (BPM) of songs for the purpose of creating tempo-driven music and enhancing athletic or other types of repetitive motion activities. Such software could be freeware or be purchased and downloaded onto the users' computers or portable storage and playback devices.

It is another object of the present invention to provide a system and method involving an Internet map service or Internet-based topographical database for creating customized music corresponding to routes and topography in many locations that a user may traverse during an activity involving repetitive motions.

It is still another object of the present invention to provide an Internet-based system and method whereby disc jockeys, radio stations, television stations, and other content users and providers can obtain customized music to suit their production needs.

It is another object of the present invention to provide a system and method whereby music producers and musicians can submit audio content that can be modified for users' pacing needs.

It is still another object of the present invention to provide a system and method that allows a user to customize music by adding audible sounds, signals, statements, phrases, or tempos in order to distinguish the customized music from the original.

It is another object of the present invention to provide a system and method that allows users to add audible sounds, signals, statements, phrases, or tempos to songs that help users identify a song's tempo for pacing purposes.

It is still another object of the present invention to provide a system and method that incorporates GPS devices to determine information including, but not limited to, the distance traveled, speed, pace, stride length, and geographic location of the user.

4

It is another object of the present invention to provide a system and method that provides users with access to databases of songs categorized by BPM for use in pacing repetitive motion activities.

It is still another object of the present invention to provide a system and method whereby users can download mixes of songs according to BPM, enabling users to achieve desired heart rates, or to burn a desired number of calories during an activity.

It is another object of the present invention to provide a system and method that links data derived from heart rate monitors, pace monitors, pedometers and the like with databases containing the BPM of all catalogued songs, to achieve heart rate and/or pacing goals.

It is still another object of the present invention to provide a system and method that links the service to athletic training programs customized to meet users' personal fitness goals.

It is another object of the present invention to provide a system and method that links the service to franchised, commercially-available weight loss, exercise, and diet programs to enable users to achieve weight loss, exercise, and diet program goals through paced repetitive motion activities.

It is still another object of the present invention to provide a system and method that links the service to repetitive motion exercise equipment such as treadmills, elliptical machines, stair climbing machines, skiing simulation machines, stationary bicycles, and the like for the purpose of pacing repetitive motion activities.

It is another object of the present invention to provide a system and method that links the service to exercise classes such as aerobic classes, stationary bicycle "spinning" classes, dance classes, martial arts classes, boxing classes, kick boxing classes, and the like for the purpose of pacing repetitive motion activities.

It is still another object of the present invention to provide a system and method that accepts recordings of newly created or composed music, compensates composers, catalogues songs in a database according to BPM (and a variety of other variables), and allows for dissemination, tempo modification, and/or sale to users.

It is another object of the present invention to provide a system and method useful to medical rehabilitation programs, physical therapy, weight loss programs, disc jockey services, and industries or manufacturing settings where repetitive motion is common, and where audible cues designed to help people maintain a consistent pace are useful.

It is still another object of the present invention to provide a repetitive motion activity device, such as a treadmill, having all the features of the system and that is responsive to the BPM of the music or the tempo of the user or can itself change the BPM of the music as the user engages in the use of the repetitive motion activity device.

Briefly described, those and other objects and features of the present invention are accomplished, as embodied and fully described herein, by a repetitive motion pacing system that includes a user profile database containing a plurality of user-provided parameters, at least one of the user-provided parameters being a target tempo value that is substantially the same as an actual tempo of a repetitive motion activity to be performed by a user; a storage device, including a file sharing database containing at least one data file having information for producing a tempo that is sensible to the user as the user performs the repetitive motion activity; a data storage and playback device adapted to producing the sensible tempo; and a communications network for receiving the at least one data file and distributing the at least one data file to the data storage and playback device. The repetitive motion pacing system

US 8,101,843 B2

**5**

can automatically determine a geographic location of the data storage and playback device, which can be done using GPS data. The system also includes a file selection means that can automatically select a plurality of data files based on the geographic location of the data storage and playback device and distribute the plurality of data files to the data storage and playback device. The objects and features of the system also include a tempo computing means for determining the target tempo, which can be done by counting a number of repetitions occurring over a measured time period, and a software subsystem for modifying the tempo information contained in the at least one data file.

The data storage and playback device includes an automatic location information component for determining the location of the data storage and playback device; a signal output component for outputting a sensible signal from the data storage and playback device; an input/output component for entering commands into and receiving information from the data storage and playback device; a data storage component for storing the at least one data file; and a communications component for sending and receiving information to and from the data storage and playback device.

The objects and features of the present invention are also accomplished, as embodied and fully described herein, by a method involving the steps of receiving in a user profile database at least one user-provided parameter including a target tempo value that is substantially the same as an actual tempo of a repetitive motion activity to be performed by a user; receiving in a storage device, including a file sharing database at least one data file having information for producing a tempo that is sensible to the user as the user performs the repetitive motion activity; comparing the target tempo value to the tempo information in the at least one data file to generate an output signal; and providing the output signal via a communications network to a data storage and playback device. The method of the invention also includes the steps of modifying the tempo information of the at least one data file so it is substantially the same as the target tempo; modifying the at least one data file to add tempo information to the file; determining the location of the data storage and playback device; comparing the location of the data storage and playback device to a database of location points, wherein each of the database of location points includes a corresponding geographic tempo value; comparing the geographic tempo values to the tempo information in the at least one data file; and using the data storage and playback device to reproduce the output signal and generate an audible sound that is sensible by the user.

With those and other objects, advantages and features of the invention that may become hereinafter apparent, the nature of the invention may be more clearly understood by reference to the following detailed description of the invention, the appended claims and to the several drawings attached herein.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a drawing depicting a schematic of the main system architecture of a repetitive motion pacing system according to one aspect of the present invention;

FIG. **2** is a graph of a repetitive motion activity represented by a sinusoidal curve according to one aspect of the present invention;

FIG. **3** is another graph of a repetitive motion activity represented by an impulse curve according to one aspect of the present invention;

**6**

FIG. **4** is another graph of a repetitive motion activity represented by a line curve according to one aspect of the present invention;

FIG. **5** is another graph of a repetitive motion activity represented by a complex curve according to one aspect of the present invention;

FIG. **6** is a drawing of a portion of a musical piece depicted in the form of sheet music;

FIG. **7** is a graph of a sound wave represented by a line curve according to one aspect of the present invention;

FIG. **8** is a diagram of a graph showing a curve representing the change in intensity of a repetitive motion activity and a sound wave curve;

FIG. **9** is a diagram showing the curves in FIG. **8** after the sound wave has been tempo-modified to match the intensity curve;

FIG. **10** is a schematic drawing of a data storage and music playback device according to one aspect of the present invention;

FIG. **11** is a process flow diagram according to a preferred embodiment of the present invention;

FIG. **12** is a diagram of a user traversing a straight course having a pre-determined geographical start and finish location;

FIG. **13** is a diagram of a user completing a repetitive task having a beginning and ending point;

FIG. **14** is a diagram of a path in relation to a coordinate system x;

FIG. **15** is a diagram of a path in relation to a coordinate system x, y;

FIG. **16** is a diagram of the path shown in FIG. **15** in relation to a coordinate system x, y, z; and

FIG. **17** is a diagram of a repetitive motion activity device being used by a person engaged in a repetitive motion activity.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Several preferred embodiments of the invention are described for illustrative purposes, it being understood that the invention may be embodied in other forms not specifically shown in the drawings.

I. System Architecture.

FIG. **1** is a drawing depicting a schematic of the main system architecture of a repetitive motion pacing system **100** according to one aspect of the invention. The system **100** includes a user **102**, which is shown as an individual but could be a group of individuals, a corporate entity, a governmental entity, or other person(s) thing(s). The invention contemplates that the user **102** will have submitted information, in the form of an application, potentially with a fee, to become a subscriber of the system **100**. The subscription provides the user **102** with different levels, amounts, or degrees of access to information stored on a server computer (described below) associated with the system **100**.

The user **102** can communicate with and receive information provided by the system **100** using wired or wireless electronic devices **104**, **106**, and/or **108**. The device **104** could be, for example, a wireless telephone, a wired telephone, a personal data assistant, or a portable computer. The device **106** could be, for example, a desktop computer. The device **108** could also be a desktop computer. Combinations of those electronic devices, or other types of electronic devices capable of sending and receiving electronic, optical, and electro-optical signals, may be used. A separate data storage and music playback device, which is adapted to receiving and/or

7

sending electronic signals to/from devices **104**, **106**, and/or **108** and for storing and manipulating the electronic signals is described later.

As shown in FIG. **1**, the devices **104** and **106** are connected to a first data communications network **110**, and the device **108** is connected to a second data communications network **112**. The particular connectivity of the devices **104**, **106**, and **108** to the first and second networks **110**, **112** is for illustrative purposes only. The network **110** may be, for example, a wireless network used by mobile computing devices like cellular telephones. The network **112** may be, for example, the Internet, an intranet, or some other network system. Preferably, the networks **110**, **112** are packet-switched networks capable of routing hypertext, extensible, or other types of mark-up language code and data in accordance with the standard Internet Protocol or some other protocol in order to generate web pages. The Internet Engineering Task Force is the standards body that creates and maintains the basic standards on which the Internet depends, including the Internet Protocol specification published in 1981.

The first and second networks **110**, **112** are connected or interconnected to a server subsystem **114**, which can include one or more server computers (not shown) that are adapted to, among other things, storing and processing data generating responses to client computer requests thr markup language files and information, and providing access to user information. The user **102** can use one or more of the electronic devices **104**, **106**, and **108** to access the server subsystem **114** preferably via a web site graphical user interface that is generated on the electronic devices **104**, **106**, and **108**, using markup language commands and data provided to those devices by the server subsystem **114**.

The server subsystem **114** is capable of interfacing with one or more databases **116**, **118**, as shown in FIG. **1**. The database **116** could be, for example, a database containing records of each user's profile and preferences. The user profiles may include personal information, such as, but not limited to, the user's name, gender, height, weight, fitness level, repetitive motion activities, duration of activities, physical address, email address, stride length, distance to be covered, desired goal time, and desired goal pace. Personal information may also include health-related information, such as heart rate, pulse, calories burned, and other information. Preferences may include, but are not limited to, music artist, album, song title, and musical genre. In addition to including personal information and preferences, the user profile may also include subscription-related information, such as the type of subscription, fees paid and due, system access times and duration, physical and billing address information, and the number of downloads from the system. The preferences may also include one or more rules, pre-defined by the user **102** or determined heuristically and automatically by the system **100** over time as it "learns" the user **102**. The rules define how the system **100** is to adapt to the user **102** while the user is engaged in a repetitive motion activity. The user profile may also include address information associated with the electronic devices **104**, **106**, and **108** used to access the system **100** and that receive downloads, in-case-of-emergency (ICE) contact information, and technical information about the user's data storage and music playback device, including system settings in case the system **100** is damaged, and other types of information.

The database **118** could be, for example, a database containing individual data files. Preferably, the data files are music files, preferably in a compressed format, obtained from a user **102** or from a third party source, although text and video files (or combinations of audio, text, and video files) are

8

also contemplated as being within the scope of the invention. The audio files may be stored in a single format, or multiple copies of the file may be stored in a different format. The video files may include information for producing moving images of various routes a user **102** might run, walk, cycle, etc. Methods for converting audio (and text and video) data files from one format to another are well known in the art.

The server subsystem **114** includes a software subsystem **124**, which will be described later.

Also shown in FIG. **1** is a server **120** connected to a database **122**. The server **120**, which is shown connected to the network **112** but could instead be connected through some other data communications network, is, for example, a third party vendor computer system. The server subsystem **114** can download music or other audio, video, or text data files from the server **120**. Thus, for example, the server **120** could be associated with a major music production and marketing company that stores a catalogue of digital music pieces on the database **122**. The server **120** and database **122** are accessible by persons who agree to take a license from the third party vendor.

It is also contemplated that the server **120** could be a computer in a peer-to-peer computer network. That is, the server **120** and the computer **108** could be used to share audio, video, and text data files over the network **112** in a peer-to-peer manner with each device operating as a server and a client computer. The user **102** could then upload those data files to the server subsystem **114** and store them in the database **118**.

As described above, the many objects of the present invention involve using music or other types of audio and/or video signals to enhance or optimize the performance of an individual engaged in a repetitive motion activity. FIGS. **2-5** are graphs having curves that represent different types of repetitive motions. For example, shown in FIG. **2** is a graph of a repetitive motion activity that is represented by a sinusoidal curve **202**. The curve **202** is actually a series of individual points plotted on a time scale, t, having unit time period, intervals t**1**, t**2**, t**3**, t**4**, t**5**, etc. Each point represents a level of intensity, I, associated with the repetitive activity. The curve **202** suggests that the intensity of the activity increases sinusoidally over time from a minimum **204** to a maximum **206**. One complete cycle of activity occurs over two time periods and repeats continuously every two time periods.

FIG. **3** is another graph of a repetitive motion activity, this one represented by a impulse curve having individual impulses **302a**, **302b**, **302c**, . . . , **302n** and impulses **304a**, **304b**, . . . **304n**. The impulses are actually a series of individual points plotted on a time scale, t, having unit time period intervals t**1**, t**2**, t**3**, t**4**, t**5**, etc., just like in FIG. **2**. Each point can be related to a level of intensity, associated with the repetitive activity. The impulses suggests that the intensity of the activity increases immediately from a minimum point **306** to a maximum point **308**, levels off for a period of time, then immediately drops from the maximum point **308** to the minimum point **306**. One complete cycle of activity occurs over two time periods and repeats continuously every two time periods.

FIG. **4** is another graph of a repetitive motion activity, this one represented by a line curve **402**. The curve **402** is actually a series of individual points plotted on a time scale, t, as described above. The curve **402** suggests that the intensity of the activity increases over time from a minimum point **404** to a maximum point **406** with an intermediate intensity point **408** that occurs for a portion of the cycle.

FIG. **5** is still another graph of a repetitive motion activity, this one represented by a complex curve **502** having multiple

9
10

minimum levels of intensity **504**, multiple intermediate peaks of intensity **506**, **508**, and a maximum level of intensity **510**. The periodicity of the curve **502** is the same as the periodicity of the curves shown in FIGS. **2**-**4**. Thus, a user engaged in any one of the repetitive motion activities represented by the curves **202**, **302***a*, **402**, and **502** could benefit from a motivational musical piece having the same periodicity.

In musical terms, the periodicity is related to the beats per minute (BPM) or tempo of the music. For example, FIG. **6** is a drawing of a portion of a musical piece **602** where the music is represented by individual musical notes **604** grouped by even measures **608** measures of time). The tempo of the musical piece is indicated by the meter signature **606**, which in the example in FIG. **6** is 4/4 tempo or four beats per measure. If the measure is two seconds, then there are four beats for every two seconds, or two beats per second (120 beats per minute). Music with a tempo in the range of about 120-130 BPM could be classified as normal, while music with a tempo in the range of about 140-160+ BPM could be classified as fast.

FIG. **7** is a graph of a sound wave represented by the line curve **702**. The curve **702** has a periodicity of about two time periods. Each point on the curve **702** represents an amount of pressure, P, at a specific period of time. The upper part of the sound wave (i.e., the crest) at point **704** indicates compression; the lower part (i.e., the trough) at point **706** indicates rarefaction. The frequency of sound is the number of air pressure oscillations occurring at a fixed point in space, and is measured in Hertz (Hz). The human ear senses both the pressure changes, measured in decibels (dB) and frequencies (Hz) related to a sound wave.

The present invention includes a software subsystem **124**, as shown in FIG. **1**, which relates the pressure signals of sound as depicted in FIG. **7** to the intensity levels of a repetitive motion activity as depicted in FIGS. **2**-**5**. Preferably, the software subsystem **124** is adapted to modify the tempo of music in such a way that the modified music matches as close as possible the desired or optimal periodicity or tempo of the user's repetitive motion activity. Sony's ACM® Pro software is an example of a software product that can be used to modify the tempo of music. Here, the distinction is made between a musical composition, which is a music piece that is generated completely new where there was none before, and a modification, which is an adjustment to specific aspects of an existing piece of music.

It is contemplated that the software subsystem **124**, which could also be installed on one of the user's electronic devices **104**, **106**, and/or **108** in addition to or instead of being part of the server subsystem **114**, can also be used to add sounds to existing music. Thus, a music piece that does not have a discernable or obvious beat, such as a classical music piece having portions played pianissimo (very soft) alternating with portions played messa di voce (louder then softer), could be modified to include a metronome impulse sound, a voice prompt, a musical note, or some other audible sound having the same tempo as the music piece, but that is more obvious to the user **102**.

FIG. **8** is a diagram of a graph showing, on the same time scale, t, a curve **802** representing the change in intensity of a repetitive motion activity and a curve **804** representing the change in pressure of an audible sound associated with music. The curve **804** is shown having a meter **806** of 4/4 tempo. The peaks of the two curves **802**, **804** do not occur at the same point in time. Thus, if the curve **802** represents the optimal activity level of the user, the audible sound curve **804** is not sufficient to provide the pacing the user needs to achieve that optimal level because the tempo of the sound curve **804** is too

fast. FIG. **9** is a diagram showing the curve **802** as shown in FIG. **8**, with a tempo-modified curve **804'**. Now, the curve **804'** has the same tempo as the curve **802**.

In FIG. **10**, there is shown a schematic of a data storage and music (or video) playback device **1002** for playing audio (or video) according to one embodiment of the present invention. The device **1002** may a commercially available iPOD®-like player or the like, modified to achieve the objects and advantages of the present invention. The device **1002** may be portable or stationary (or parts of it may be portable and other parts stationary). For example, the device **1002** may need to be embodied in a lightweight, portable housing for a runner. In contrast, the device **1002** could be larger and integrated into the control panel of a treadmill (or removable from the treadmill for use outside by the runner). The device **1002** could be made up of physically separable components such that the audio speakers or video screen could be physically attached to something, like the walls of a pool, while the rest of the components could be transported to a different pool and connected to different speakers/video devices. The device **1002** could be integrated into a whole-house entertainment system. It could also be adapted to be an add-on component to existing storage and playback devices, which may include, but are not limited to, home, gymnasium, or health club, audio-video equipment and portable digital music players. The device **1002** could be part of a file sharing network, an on-demand radio or television service, a cable service, a satellite radio or television service, a mobile phone network or other communications system.

The device **1002** includes a main component **1004** which itself includes circuits and software associated with memory **1014**, power **1016**, a microprocessor **1018**, and communications **1020** subcomponents. It also has an audio output device **1006**, a data storage device **1008**, optionally an Automatic Location Information (ALI) device **1010**, and an input/output device **1012**.

The communications subcomponent **1020** of the main component **1004** are intended to provide the device **1002** with the capability of communicating data from the device's permanent or volatile memory subcomponent **1014** to another device via a wireless or wired data communications network. Thus, the communications circuits of the communications subcomponent **1020** may be a modem with an RJ-11 jack for receiving a suitably-sized cable plug for connecting the device **1002** to a traditional public circuit-switched telephone network. The communications subcomponent **1020** may instead be a modem with a transceiver for sending and receiving data packets over a wireless network.

The power subcomponent **1016** of the device **1002** can be provided by conventional power supplies (i.e., 110-volt service). Power may be provided by rechargeable or disposable alkaline or other types of batteries (not shown).

The microprocessor subcomponent **1018** may be any conventional microprocessor, such as a central processing unit of a computer.

Also shown in FIG. **10** is a data storage device **1008**, which can be a permanent or removable hard disk drive, memory stick, memory card, or other conventional or miniaturized storage device that is operatively connected to the microprocessor subcomponent **1018** and memory subcomponent **1014** within the main component **1004**.

The audio output device **1006** shown in FIG. **10**, which is operatively connected (i.e., by wire or wireless devices) to the main component **1004**, may include speakers associated with headphones or standup speakers. For example, as suggested above, the speakers may be built into a treadmill, built into the walls underwater in a pool, or mounted on a wall in a gym-

**11**

nasium or home. The device **1002** may have multiple sets of speakers located in different places and each being used to play different types of music. Thus, for example, the device **1002** may be connected to five speakers, four of which play music while the fifth speaker (such as a sub-woofer) plays or emphasizes the tempo of the music.

One of ordinary skill in the art will appreciate and understand that the audio output device **1006** could be a video output device, such as a monitor, light, or other device that produces visible signals that can be sensed by the eyes of the user **102**. Thus, light can be used to produce pulses of light energy that the user **102** can detect while he performs a repetitive motion activity.

The ALI device **1010** shown in FIG. **10**, which is operatively connected to the main component **1004**, will preferably be used on portable devices. ALI devices are known in the art, and include GPS devices. A GPS device uses a receiver to receive telemetry data from a plurality of the constellation of GPS satellites orbiting the Earth. The GPS device will include memory for storing the data, a microprocessor, and software for computing the location of the ALI device from the telemetry data. An accurate clock synchronized to the clock used by the GPS satellites is required to perform accurate location computations. The ALI device can also rely on fixed terrestrial sources, such as mobile phone network transmission/repeater towers and triangulation methods to identify the location of the device **1002**.

The input/output device **1012** shown in FIG. **10**, which is operatively connected to the main component **1004**, could be, for example, a keypad on a mobile phone, a keyboard for a computer, a mouse, a touchscreen, a touchpad, a monitor, or other interface device that allows the user **102** to input commands and allows the device **102** to present information to the user **102**. It is also contemplated that the input/output device could provide an interface for a remote monitoring device (not shown), such as a heartbeat monitor, blood oxygen monitor, pedometer, or some other device for monitoring the current state of the user. That state information can be used to assess whether the device **1002** should manually or automatically adjust the BPM of the music being played on the audio output device **1006**. For example, if the device **1002** determines, based on the ALI-type information that the user **102** is slowing down and not maintaining his target pace, the device can warn the user **102** using the audio output device **1006**, for example, which would allow the user to use the input/output device **1012** to manually select a different play list of musical pieces that are better matched to the user's **102** current pace.

II. System Operation.

FIG. **11** provides a process flow diagram according to a preferred embodiment of the present invention. In process step **1102**, a user **102** interfaces with the system **100** by visiting a website through a networked computer **108**, wireless or wired phone **104**, or by some other means as described above. The system **100** then receives an electronic signal or signals representing user profile information. If the user **102** is a new customer, a new user profile is created. If the user **102** is an existing customer, the user's existing user profile is modified.

The system **100** receives/updates user profiles when or after the user **102** enters personal information using the input/output device **1012**, such as a keypad or keyboard. For example, the user **102** may identify the activity they wish to perform and their musical preferences. A web site form can facilitate receiving that information. In addition, the user **102** provides pace information (e.g., BPM) and may select music

**12**

having a comparable BPM. That information is stored in the user database **116** that may include information provided at later dates by repeat users.

Personal information may also include, but is not limited to, the user's name, gender, height, weight, fitness level, repetitive motion activities, duration of activities, address, email address, stride length, distance to be covered, and desired goal time. Musical preferences may include, but are not limited to, artist, album, song title, and musical genre. That information is stored in the user's profile as described above.

The system **100** receives the user's **102** comfortable pace, heart rate, calorie consumption rate, and other baseline or target information for their respective activities. In process step **1104**, the user **102** can determine this by performing a repetitive motion activity (i.e., walking, running, swimming, cycling, lifting, stepping, etc.) for a given time period, such as one minute, while counting the number of steps, strokes, pedal rotations, movements, etc., that he performs in that time period. That information can be automatically or manually sent to the system **100**, which receives the information and stores it automatically.

The user **102** who visits the web site generated by the server subsystem **114** may not know the pace or BPM he wishes to achieve for a particular repetitive motion activity. Therefore, the system **100** provides the user **102** a simple method of measuring a target pace, and prompts the user **102** to enter that pace into a web form or otherwise provide the information to the system **100**.

For example, if the user **102** wishes to use music to pace him to a desired goal time or optimal level of performance over a discrete time period, such as running a mile under five minutes or swimming 50 meters under 30 seconds, certain information is required. First, the user **102** must know the distance covered per each step, stroke, spin of a wheel, etc., which can be conveniently referred to as "stride length." The stride length over time is the stride period. FIGS. **2-5** graphically illustrate various types of stride lengths over a given time period (the peak intensity represents a complete stride period).

The present invention includes a simple method for the user **102** to determine his stride length. Stride length can be determined by many different methods including, but not limited to, the following:

Mathematical Determination. A user **102** mathematically determines his stride length on a course of specific length such as 100 meters, a mile, etc. This is illustrated in FIG. **12**, which shows a user **102** running on a straight course **1202** having a pre-determined geographical start S and finish F location. Mathematically determining stride length is possible if the user provides the number of steps/repeated motions in a given time period, such as one minute, as well as the time to complete a course of specific length such as 100 meters, a mile, a kilometer, etc. As shown in FIG. **12**, the distance between the user's steps, which are represented by the impulse lines **1204**, is not consistent, so the steps per unit distance should be an average.

Body Measurement. A user **102** estimates his stride length by taking body measurements such as the length from his hip to his ankle, or from fingertip to shoulder.

Average Stride Length. A user **102** refers to a provided table to estimate his stride length, based upon data elements such as height, weight, gender, fitness level, etc. These tables may be provided on the web site generated by the server subsystem **114**.

Geometric Measurements. A user **102** measures the distance or other physical parameter associated with a repetitive

US 8,101,843 B2

13                                                                    14

motion, such as lifting and moving a box as illustrated, in FIG. **13**. The user **102** measures the distance to complete the task between the start of the task at point B and, the end of the task at point E. The time to complete a single repetitive task can be measured as a continuum over the distance B-E, as illustrated by the curve **1302**, or as a fraction of the continuum, as illustrated by the curve **1304**. Measuring the time to complete a single task as in curve **1304**, where only a fraction of total time requires estimating extra time to account for errors and imprecision in the system, distractions, and windup and let down time before and after each task, which may be important in industrial settings.

Referring to FIG. **11** again, in process step **1106**, the user's location is determined in real-time or near real-time using any means for obtaining AU-type data. A combination GPS telemetry receiver and software for computing location is one such means for obtaining ALI data. Many mobile phones and computing devices have integrated GPS technology. The present invention contemplates the use of a portable music storage and playback device **1002** having an integrated UPS receiver or is otherwise adapted to operatively connect to or interface with a separate UPS receiver. A touchpad at the ends of a pool lane could be used to estimate location information of a swimmer. Other electrical-optical-mechanical sensing devices, including biometric sensing devices, could also be employed, for example in a work environment, to identify the location of the user **102**.

The ALI data can be converted into a suitable signal and automatically sent to the system **100** over the first or second data communications networks **110, 112** (FIG. **1**). The system **100** receives the ALI data and stores it automatically. Ideally, time-stamped three-dimensional geographic location information (i.e., latitude, longitude, altitude, and time) are determined on a regular basis and sent by the ALI device **1010** (FIG. **10**) and received by the system **100**.

Another exemplary means for obtaining the location information of the user **102** involves a geographical information system whereby the user pre-selects routes of travel (e.g., a trail or road course) and, along with pacing information from the user's user profile, an approximate geographic location of the user **102** can be estimated and received by the system **100**. Thus, if the user **102** intends to trove/sex one-mile loop over relatively flat terrain identified on a conventional topographic map at a 20-minute per mile walking pace, the approximate location of the user **102** can be determined over the course of the 20-minute activity period using simple mathematical calculations.

In process step **1108**, once the user **102** has determined or estimated his stride length, the system **100** receives that information via the networked electronic devices **104, 106, 108**, as described above, using an input/output device **1012** (FIG. **10**). The system **100** will use the stride length information to identify which song or combination of songs are best suited to meet the pacing needs or time goals for specific distances such as a mile, a kilometer, etc., and that satisfy other criteria specified in the user profile. The system **100** will make those songs available for download by the user **102**, or will automatically distribute the songs to an address designated by the user **102**, such as a web site address, an e-mail address, a mobile phone number, or some other pre-selected destination address contained in the user profile database or provided manually by the user **102**.

The system **100** maintains a separate song database categorized according to variables including, but not limited, to, title, artist, genre, duration (minutes and seconds), BPM, etc. After obtaining specific data from the user **102**, the system **100** cross-references user profile data, pace data, activity goals, and musical preferences with the song database to identify songs that match the needs of the user **102**. For pacing purposes, a desired pace in steps, pedal strokes, arm strokes, and the like per minute and a song's BPM must be substantially or at least approximately equal. Songs in the database that match the desired paces and musical preferences of the user **102** are presented, to the user **102** in a menu of choices. The user **102** chooses the songs they wish to download and use for pacing purposes.

In some cases, the user **102** may wish to download a song for pacing purposes that does not have a BPM that matches his pacing needs. If the song falls within an acceptable range above or below the target BPM, it is possible to modify the tempo of the song to the desired pace as described above. Using readily available software, like Sony's ACID® Pro, a song's BPM can be altered easily without changing the pitch of the music or negatively impacting the audio quality if the song is in an appropriate digital format.

In process step **1110**, if the user **102** requires that a song be modified to match a desired BPM, the following steps are performed. First, after the system **100** receives and creates a user profile containing personal information, desired activity, musical preferences, and desired pace and/or goal time, among other things, the system **100** cross references the pace information and other preferences with a song database. Songs that are a direct match to the BPM preferences and other criteria (e.g., genre) selected by the user **102** are placed on a menu of choices. Songs that fall within an acceptable range above or below the target pace, and which match at least some of the user's criteria, are also placed on the menu of choices. The user **102** then selects the songs that he wishes to download and the system makes those songs available or delivers the songs as described above. Songs that already match the desired BPM can be automatically downloaded to the address provided by the user **102** in his user profile (i.e., the address can include, but is not limited to, a phone number, an Internet Protocol address, or any other addressable location). Songs that require tempo modification are processed through several additional steps either by the system **100** or by the user **102** before they are used.

Songs requiring tempo modification are transferred to a tempo modification program that automatically reads the BPM for that song either from the ID3 tags associated with the song, from the song database, from a vendor that provided the song, or from some other location in the system **100** . . . . " The user **102** may download songs requiring tempo modification, import them into a tempo modification software program, modify them, and then add the songs to their play list or portable audio player. The desired goal or target BPM for the song is obtained from the user's data stored in the user profile database or is provided separately by the user **102**. After a song is loaded into the tempo modification program, and the program understands the original BPM and target BPM, the program modifies the song's tempo to the desired BPM as illustrated in FIGS. **8** and **9**. Additional information can be electronically added to the song data, such as, for example, a repeating metronome beat, a highlight beat, or a word t'e.g., "step" or "go"). The pitch of the song is held constant during this process, and the song is modified without negatively impacting the audio quality. The new, modified song file is saved and the data file is made available for download or is automatically delivered to the address specified by the user in an appropriate digital format.

The invention can be used by musicians to provide their original music to the system **100**, which any user **102** can then select for his pacing needs.

US 8,101,843 B2

15                                                                    16

In process step 1112, the system 100 provides the songs (either original or modified) to the user 102. This can be a free- or fee-based transaction based on a subscription or pay-as-you-go model. The user 102 downloads his customized music to his electronic device 104, 106, and/or 108 (FIG. 1), automatically to his portable storage and playback device 1002 (FIG. 10), a web site server, or to some other device for transfer onto a portable music player. The user 102 then listens to the songs to pace himself to achieve potentially to a desired completion time for a repetitive motion activity.

FIGS. 14-16 illustrate various uses of a portable data storage and music playback device 1002 according to one aspect of the invention. In FIG. 14, shown therein is a path 1402 in relation to a coordinate system x (representing a linear dimension). The path 1402 can be defined by a linear distance between spaced-apart points S and F. The path 1402 can be further defined by a finite number of linear path segments A, B, C and D, which, in the case of FIG. 14, do not overlap with each other. For description purposes, assume path 1402 between points S and F is 50-meters long (i.e., the length of a lap pool), and path segments A, B, C, and D are 10-meters, 8-meters, 7-meters, and 15-meters, respectively (thus, they add up to 50-meters or the total length of the path 1402). The user 102 swims 50-meter laps and listens to music (or observes light pulses) having a constant BPM tempo that has been adjusted specifically to the user's swim stroke so that he can maintain as constant a stroke as possible toward the goal of completing 50 meters within a set time period.

The device 1002 can also be programmed so that the BPM of the music automatically changes slightly with each 50 meters completed, so that as the swimmer tires, he will still be able to achieve the time goal.

The device 1002 can also be programmed so that the BPM of the music automatically changes in each path segment, so that the BPM of segment A is faster than the BPM in segment B, C, and D, for example. Thus, the device could be used by competitive swimmers, runners, and walkers during fartlek training, which is an athletic training technique in which periods of intense effort alternate with periods of less strenuous effort in a continuous workout. Thus, the BPM of the music assigned to segments A and C could be twice the BPM of the music assigned to segments B and D.

FIG. 15 illustrates another path 1502 in relation to a coordinate system x, y. The path 1502 can be defined by a start position S and a finish position F, which are the same geographical point in space. The path 1502 can be further defined by a finite number of path segments A, B, C, D, and E which, in the case of FIG. 15, do not overlap with each other. For description purposes, assume path 1502 is a 10-mile road and trail route that the user 102, training for a marathon, regularly traverses as part of his training regime. FIG. 16 illustrates the same route in the vertical z dimension and shows the altitude changes that the user experiences over the course of the route. Segment C is a hilly portion of the course and involve a slower switch-back portion up a long hillside through the woods. The geographical coordinates at discrete points in, i.e., x', y', z'), and n, i.e., (x", y", z"), along the route are stored in the memory subcomponent 1014 of the device 1002.

Thus, the user 102 carries his portable data storage and music playback device 1002 during the 10-mile run, and, because the device 1002 is equipped with an ALI device 1010, the system 100 automatically determines the user's real-time or near real-time geographic location along the route 1502 and compares the location to the discrete locations stored in memory. When the user 102 sets out running in segment A, which is a flat road segment of the 10-mile route, the device 1002 plays a specific song having BPM tempo that is consis-

tent with the pace the user wishes to maintain. However, when the user 102 reaches the off-road segment B, the uneven footing requires a slower pace, so the device, knowing when the users enters segment B by comparing the ALI data to the stored location information, changes the BPM of the song or plays a different song having a slower BPM. When the user reaches the twisty segment C, which is the slowest segment of the 10-mile route, the device 1002 begins playing a song having a slower BPM to match the user's short stride length as he traverses the hilly segment C.

The system 100 also has an adaptive capability that supports a user 102 who, for example, is running and having trouble keeping pace with his music. The user 102 may wish to reduce the pace by changing the music he is listening to. The user 102 might have included a rule in his user profile that governs the songs being played by the portable data storage and music playback device 1002. The aforementioned GPS feature in the portable data storage and music playback device 1002 will recognize that the user's 102 pace is dropping off, causing the device 1002 to switch to a slower play list based upon the rules entered by the user 102. The portable data storage and music playback device 1002 itself may provide the user 102 with a manual switch that causes the BPM of songs to become smaller or to play the song slower.

Another example of the adaptive capabilities of the system 100 is as follows. Consider a user 102 who uses a mix of music to complete a route. The user 102 might wish to improve his time the next time he traverses the route by 5%. The system 200 allows the user 102 to submit this request to the device 1002, spurring the system 100 to tempo modify the user's 102 existing mix to be 5% faster than before or automatically provide a new selection of songs that is 5% faster then the previous song mix.

Another example of the method of using the system 100 is as follows. FIG. 17 is a diagram of a repetitive motion activity device 1702 being used by a user 102 engaged in a repetitive motion activity. The system 100 may be an integral part of, or interconnected to, the separate repetitive motion activity device 1702, which in FIG. 17 is a treadmill, but any device, such as a stair master, elliptical machine and the like, can be used. The device 1702 can determine a speed or rate of rotation of the separate device based on the tempo of the music or video being played on the portable data storage and music playback device 1002. In other words, as a song plays, the device's 1702 computer recognizes the BPM of the musical piece or video being played and automatically adjusts the speed or rate of rotation of the device 1702 to accommodate the song's pace. The user 102 could fine-tune the speed or rate of rotation as well to allow for any variations in his stride length that the separate device cannot automatically sense.

Another example of the method of using the system 100 is as follows. As noted above, the system 100 may be a integral part of, or interconnected to, a separate repetitive motion activity device 1702, such as a treadmill. The system 100 will provide a video feature whereby video images of locations where a user 102 runs, walks, cycles, climb stairs, etc., are displayed on a video screen 1704 in front of the treadmill or other repetitive motion activity device 1702. The frame rate of the video would be automatically calibrated to match the speed of the user's 102 pace, speeding up when the user 102 increases his pace, and slowing down when the user 102 slows his pace. Or, the video files may contain information that produces images representing a route the user 102 might run, walk, cycle, etc., such as, for example, the route as shown in FIG. 15. The video files would be linked the database of information stored for path 1502 such that the tempo of the repetitive motion activity device 1702 and the video being displayed

17

change to reflect the path segments A, B, C, D, and E in order to simulate what the user **102** would have experienced if he had actually traversed the actual path **1502**.

The ALI device **1010** can also provide information about the user **102**, such as total distance traversed over time, average pace, locations, calories burned, etc., which information can be uploaded to the system **100** and stored in the database **116** as part of the user's user profile.

The ALI information can also be employed in industrial settings where, by knowing the location of the user **102**, the system **100** and device **1002** know what activity the user **102** is engaged in. Thus, when the system **100** recognizes that the user **102** is located at position P1 within a factory, based on ALI information it receives from the ALI device **1010**, and position P1 is a conveyor system, the device **1002** plays a pre-determined BPM associated with the tempo of the conveyor system. When the system **100** recognizes that the user **102** is located at a new position P2 within a factory, and position P2 is a truck loading area, the device **1002** plays a different pre-determined BPM associated with the tempo of the loading area.

Although certain presently preferred embodiments of the disclosed invention have been specifically described herein, it will be apparent to those skilled in the art to which the invention pertains that variations and modifications of the various embodiments shown and described herein may be made without departing from the spirit and scope of the invention. Accordingly, it is intended that the invention be limited only to the extent required by the appended claims and the applicable rules of law.

I claim:

**1**. A pacing system comprising:

storage means for storing a tempo or a pace value corresponding to at least one pre-selected activity type and for storing at least one data file having information for producing a tempo or a pace signal in a form that is audible or visible;

selection means for selecting the at least one data file based on the tempo or pace value;

output means responsive to the selection means for playing the at least one data file to produce the signal; and

connection means for transferring the at least one data file to or from the storage means.

**2**. The pacing system of claim **1**, further comprising means for determining a geographic location.

**3**. The pacing system of claim **2**, wherein the means for determining a geographic location is an ALI device.

**4**. The pacing system of claim **1**, wherein the selection means is an input/output device.

**5**. The pacing system of claim **1**, wherein the audible or visible signal is audible musical.

**6**. The pacing system of claim **1**, further comprising tempo computing means for determining an initial tempo or pace value.

**7**. The pacing system of claim **1**, further comprising a software subsystem for modifying the information in the data file such that the modified information is adapted to producing a tempo or a pace signal in a form that is audible or visible.

**8**. The pacing system of claim **1**, further comprising a software subsystem for automatically selecting the at least one data file based on an updated tempo or pace value or an updated activity type.

**9**. The pacing system of claim **1**, wherein the connection means is a wireless network.

**10**. The pacing system of claim **1**, wherein the storage means for storing the tempo or the pace value and the least one data file comprises a user-profile database.

18

**11**. The pacing system of claim **10**, wherein the user profile database comprises a plurality of user profiles, each of which is associated with one of a plurality of users.

**12**. The pacing system of claim **10**, wherein the user-profile database includes a target tempo or target pace value corresponding to the at least one pre-selected activity type.

**13**. The pacing system of claim **1**, wherein the at least one data file comprises advertising information.

**14**. The pacing system of clam **1**, wherein the at least one data file is selected based on a geographic location.

**15**. The pacing system of claim **1**, wherein the tempo value is determined by dividing a measured number of repetitions of an activity corresponding to the pre-selected activity type by a measured time period during which the activity is performed.

**16**. The pacing system of claim **1**, further comprising movement detection means for determining a position of at least one of the storage means, output means, connection means, and selection means.

**17**. A method performed on a hand-held computing device, comprising:

designating one or more target tempo or target pace values corresponding to a pre-selected activity type; and

adjusting the tempo of one or more audio tracks being outputted to match at least one of the designated target tempo or target pace values.

**18**. A computer-readable storage medium comprising computer program codes which when executed by a computer processor trigger the computer processor to perform the following steps:

receiving in a user-profile database at least one pre-selected target tempo or target pace value, activity location, or activity type;

providing access to one or more song files categorized by their respective tempo information, each song file having information for producing a sensible tempo, wherein the one or more song files are identified based on the target tempo or target pace value, the goal information, the activity location, or the activity type; and

storing a customized training program having information corresponding to the target tempo or pace value.

**19**. A method for transferring data between a storage and playback device and a server containing at least one audio file having information for producing a tempo that is sensible to at least one user as the at least one user performs a repetitive motion activity, the storage and playback device being capable of storing and playing the information in the audio file, the method comprising, at the server:

receiving a request to substantially match at least one audio file based on its beats per minute for outputting on the storage and playback device;

identifying a metadata tempo tag for each designated audio file, each tempo tag indicating the tempo of the audio file;

causing to be delivered to, or providing to, the storage and playback device the audio file.

**20**. The method for transferring data as recited in claim **19** further comprising:

at the storage and playback device, receiving the audio file including the tempo tag from the server; and

at the storage and playback device, storing the audio file including the tempo tag for future use.

**21**. The method for transferring data as recited in claim **19** further comprising:

designating a plurality of audio files for downloading to the storage and payback device, the plurality of audio file

US 8,101,843 B2

19 20

containing an original version of the audio file and at least one new version of the file having a different tempo;

at the server, causing to be delivered to, or providing to, the storage and playback device the plurality of audio files including a tempo tag associated with each audio file.

**22.** A repetitive motion pacing system comprising:

at least one server for receiving a plurality of user-provided parameters and transmitting at least one data file;

a user profile database for storing the plurality of user-provided parameters, wherein at least one of the user-provided parameters is a pre-selected activity type of an activity to be performed by at least one user;

a storage device containing the at least one data file, wherein the data file comprises information for producing a tempo that is sensible to the at least one user; and

a communications network for transmitting the at least one data file to the at least one user.

**23.** The repetitive motion pacing system of claim **22,** further comprising a data storage and playback device for receiving the at least one data file, identifying the tempo information, and producing the sensible tempo.

**24.** The computer-readable storage medium of claim **18,** wherein the user-profile database is located on one of a remote server, a wireless phone, an ALI-equipped device, or an MP3 player.

**25.** A repetitive motion pacing system for pacing a user comprising:

a web site adapted to allowing the user to pre-select from a set of user-selectable activity types an activity they wish to perform and entering one or more target tempo or target pace values corresponding to the activity;

a data storage and playback device; and

a communications device adapted to transferring data related to the pre-selected activity or the target tempo or the target pace values between the web site and the data storage and playback device.

**26.** The repetitive motion pacing system of claim **25,** further comprising an output device for outputting at least some of the data such that it is sensible to the user.

**27.** The repetitive motion pacing system of claim **26,** wherein the output device outputs a visible signal, an audible signal, or a combination of a visible and an audible signal, and wherein the signal is related to the pre-selected activity or the target tempo or the target pace values.

**28.** The repetitive motion pacing system of claim **25,** wherein the repetitive motion pacing system can determine a geographic location of the data storage and playback device.

**29.** The repetitive motion pacing system of claim **25,** further comprising a plurality of data files, wherein at least one of the data files is automatically selected based on the target tempo or the target pace values, the pre-selected activity, or a geographic location of the data storage and playback device.

**30.** The repetitive motion pacing system of claim **29,** wherein the plurality of data files comprise music files.

**31.** The repetitive motion pacing system of claim **29,** further comprising a software subsystem for associating a beats per minute value to each of the plurality of data files.

**32.** The repetitive motion pacing system of claim **25,** wherein the web site includes a web form for pre-selecting the activity and the one or more target tempo or target pace values.

**33.** The repetitive motion pacing system of claim **25,** wherein the data storage and playback device is a wireless phone, an ALI-equipped device, or an MP3 player.

**34.** The repetitive motion pacing system of claim **25,** further comprising a subsystem for broadcasting the data over one of a television, satellite, or cable network.

**35.** A computer-readable storage medium comprising computer program codes which when executed by a computer processor on a data storage and playback device trigger the computer processor to perform the following steps:

Allowing the user to input a user-selected activity type, and to select and change a target tempo value;

automatically scanning the data storage and playback device for existing song files and tempo information associated with the song files;

downloading to the data storage and playback device tempo information associated with the song files if the tempo information associated with the song files is missing;

automatically selecting, based on the target tempo value, one or more of the song files having tempo information that is substantially the same as the target tempo value;

sequentially playing the selected song files by the data storage and playback device; and

displaying on the data storage and playback device the target tempo value and the tempo associated with the song file when it is being played.

**36.** The computer-readable storage medium having computer program codes according to claim **35,** further comprising connecting to a vendor using a communications device associated with the data storage and playback device to obtain the tempo information associated with the song files.

**37.** A repetitive motion pacing system comprising:

a user profile database containing a plurality of user defined parameters, at least one of the user-defined parameters being a target tempo value that is substantially the same as an actual tempo of a repetitive motion activity to be performed by at least one user;

a file sharing database containing at least one data file having information for producing a tempo that is sensible to the at least one user as the at least one user performs the repetitive motion activity;

a data storage and playback device adapted to producing the sensible tempo; and

a communications network for receiving the at least one data file and distributing the at least one data file to the data storage and playback device,

wherein the tempo of music provided to the user is modified to match or substantially match the target tempo or target pace value provided by the user.

*   *   *   *   *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.            : 8,101,843 B2                                    Page 1 of 1
APPLICATION NO.   : 12/916869
DATED                    : January 24, 2012
INVENTOR(S)        : William D. Turner

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 13, line number 15, replace "AU-type" with -- ALI-type --.

Column 13, line number 20, replace "UPS" with -- GPS --.

Column 13, line number 42, replace "trove/sex" with -- traverse a --.

Signed and Sealed this
Third Day of April, 2012

David J. Kappos
*Director of the United States Patent and Trademark Office*