BLANK ROME LLP
Dennis M.P. Ehling (SBN 168892)
Ehling@Blankrome.com
Sridavi Ganesan (SBN 216129)
SGanesan@BlankRome.com
1925 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

BLANK ROME LLP
James T. Smith, Esq.
Victor M. Wigman, Esq.
Brian Wm. Higgins, Esq.
Nicholas M. Nyemah, Esq.
600 New Hampshire Avenue, N.W.
Washington, DC 20037
Telephone: 202.772.5800

Attorneys for Plaintiff
PACING TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACING TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>GARMIN INTERNATIONAL, INC., GARMIN USA, INC. AND GARMIN, LTD.,<br><br>Defendants. | Case No. 3:12-cv-01067 BEN (WMc)<br><br>[Assigned to Honorable Roger T. Benitez; Magistrate Judge William McCurine, Jr, ]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY**<br><br>*[Declaration of Brian Wm. Higgins; Proposed Order filed concurrently herewith]*<br><br>Complaint Filed: May 1, 2012<br>Trial Date: None Set |

138531.00601/95123305v.2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................ 2

III.   ARGUMENT ..................................................................................................... 5

      A.   Gamin's Customer's Names and Email Addresses Are Unquestionably Discoverable and Relevant to Pacing's Induced Infringement Claim, as Well as the Level of Damages ....................... 5

      B.   None of Defendants' Reasons For Withholding Customer Information Outweigh Rule 26's Mandate to Produce ......................... 8

      C.   Despite Garmin's Objections, Pacing's Survey is Unquestionably the Best Approach to Efficiently Gathering Evidence of Induced Infringement in This Case ......................................................................... 10

IV.   CONCLUSION ............................................................................................... 13

138531.00601/95123305v.2                                            i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY

3:12-CV-01067 BEN (WMc)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Crane Plastics, Co., et al. v. Louisiana-Pacific Corp.*,
   119 F.Supp.2d 749 (S.D. Ohio 2000) .................................................................. 7

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) .............................................................................. 5

*Echostar Satellite LLC v. Freetech Inc.*,
   2008 WL 4460236 (N.D. Cal Sept. 29, 2008) ................................................. 9, 10

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) .............................................................................. 10

*Kilopass Tech. Inc v. Sidense Corp.*,
   2012 U.S. Dist. LEXIS 47865 (N.D. Cal. 2012) ............................................ 7, 11

*Manville Sales Corp. v. Paramount Sys., Inc.*,
   917 F.2d 544 (Fed. Cir. 1990) ................................................................................ 5

*Ropak Corp. et al. v. Plastican, Inc.*,
   2006 U.S. Dist. LEXIS 19912 (N.D. Ill. 2006) ..................................................... 7

*Tama Plastic Industries v. Pritchett Twine & Net Wrap, LLC, et al.*,
   2013 U.S. Dist. LEXIS 9607 (D. Neb. 2013) ........................................................ 7

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009) .............................................................................. 5

*Wilkison v. Times Mirrors Corp.*,
   215 Cal.App.3d 1034 (1989) .................................................................................. 8

**STATUTES**

35 U.S.C. §271(b) ........................................................................................................ 5

Cal. Civ. Code §§1798.80, 1798.81.5 ..................................................................... 8, 9

**OTHER AUTHORITIES**

California Constitution Article 1, Section 1 ............................................................. 8
FRCP 26 ............................................................................................................ 1, 3, 8
FRCP 26(b) ........................................................................................................... 1, 6
FRCP 26(b)(1) ............................................................................................................ 7
FRCP 45 ............................................................................................................. 1, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This dispute is not just about surveys. It is also not about customer privacy and assumed "chilling effects" on business, as Defendants Garmin International, Inc. and Garmin USA, Inc. (collectively "Defendants" or "Garmin") contend. The real issue is whether the identity of direct infringers—information Defendants possess but for months have refused to turn over to Plaintiff Pacing Technologies, LLC ("Pacing")—is discoverable in a patent infringement case where, like here, induced infringement is alleged. Federal Rule of Civil Procedure ("FRCP") 26(b) says Garmin must produce the "identity and location of persons who know of any discoverable matter." Garmin's customers, who have purchased and used accused products in a manner set forth in Plaintiff's amended complaint and infringement contentions, have knowledge of discoverable matter. Yet Defendants have withheld their identities from Pacing for more than five months, causing Pacing unnecessary delay in obtaining critical direct evidence related to its claim of induced infringement. Therefore, Plaintiff requests the Court order Defendants to comply with Rule 26 and produce the requested information.

Pacing also requests the Court order Garmin to produce their customer's email addresses so that a survey may be conducted to avoid the unnecessary time and expense on both parties, and on the Court, that would be expended if dozens or possibly hundreds of subpoenas were served on Garmin customers. *See* FRCP 45. A well-crafted survey sent by email, such as the one briefly mentioned to the Court during the recent telephonic conference and discussed in detail below, would be less time consuming, cost significantly less, and not waste judicial resources compared to subpoena practice. A voluntary survey would be less burdensome on Defendants' customers than a subpoena, which is mandatory and much more intimidating to a

138531.00601/95123305v.2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-cv-01067 BEN (WMc)

layperson. Surveys are an effective and efficient alternative means of obtaining discoverable information from customers. Pacing's counsel have experience conducing such surveys, and the Federal Circuit allows them in patent cases. If the Court does not allow Pacing to conduct a survey, it will have no choice but to rely exclusively on subpoenas.

## II.  STATEMENT OF FACTS

On July 26, 2012, Pacing filed its First Amended Complaint alleging indirect infringement of the patent-in-suit. (ECF 21, at ¶¶15-43).) Specifically, Pacing stated, with regard to Garmin's customer's direct infringement,

> 36. Defendants' customers directly infringe the '843 Patent by, for example, placing every element of the claimed systems into use, having control over those systems when used, and directly benefiting from the use of those systems. For example, Defendants' customers directly infringe the '843 Patent by: (1) using the Garmin Connect website to create and/or edit workout information, the workout information including pacing information related to an activity selected by the customer, such as walking, running, or cycling; and (2) using the Garmin-supplied communications devices, such as the USB ANT Stick or USB cable, and one or more of the above-mentioned Garmin products to transfer the workout information from the Garmin Connect website to one of those devices, such as a Garmin Forerunner, Swim, and/or Edge device, such that the workout information is stored on the device and used for pacing and other purposes.

On September 12, 2012, Pacing served onto Defendants its First Set of Request for Production of Documents and First Set of Interrogatories directed toward the

138531.00601/95123305v.2                          2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

1  above allegation. (Higgins Decl., ¶ 3, Exh. A.) Request No. 7 specifically sought
2  documents relating to "customer use of Garmin Connect web services and Garmin Fit,
3  **including a list of all customers (users) of Garmin Connect web services."** (*See*
4  Id.) Similarly, Interrogatory No. 4 specifically asked Defendants to "**identify all**
5  **persons who have used Garmin Connect since the issuance of the patent-in-suit**
6  **to transfer information stored by Garmin … to any of the Garmin Products."**
7  (*Id.*) The term "identify" was defined to mean the names of such persons and their
8  respective contact information. (*Id.*)

   On September 24, 2012, Defendants served their FRCP 26 initial disclosures,
10 but did not produce customer information. (Higgins Decl., ¶4.)

11  On October 15, 2012, Defendants responded to the above discovery requests,
12 but again did not produce customer information. Instead, Defendants provided
13 summary information (i.e. total number of users) and composite statistics of users'
14 upload and download activities.

15  On October 19, 2012, Pacing sent Defendants a letter identifying the
16 deficiencies in the discovery responses and documents produced, including the lack of
17 Garmin Connect database records. (Higgins Decl., ¶6, Exh. B.) Defendants provided
18 supplemental responses to the discovery requests, but still did not produce customer
19 information.

20  On November 13, 2012, Pacing sent another letter to Defendants identifying the
21 deficiencies in the supplemental responses and noting the failure to produce customer
22 information. (Higgins Decl., ¶7, Exh. C.) On November 14, 2012, Defendants stated
23 that they were reviewing to see if the information sought regarding customer use
24 violates privacy laws. (*Id.*)

25  On November 21, 2012, Defendants agreed to make the Garmin Connect
26 database available for inspection on a stand-alone computer such that it would be

treated like source code. (Higgins Decl., ¶8.) Pacing rejected the treatment of the database as source code, but agreed they would inspect and copy the database at Defendants' headquarters. (*Id.*)

On December 14, 2012, during a meet and confer telephone call to discuss the details of the database, Defendants stated that they could not produce Garmin Connect user names and contact information because it would violate their website's Privacy Policy. (Higgins Decl,, ¶9., Exh. D.) Defendants asked what purpose Pacing needed that information as opposed to the aforementioned summary information. (*Id.*)

On December 17, 2012, Pacing explained that the information sought would be used, for example, to send Garmin Connect users a survey asking certain questions about their purchase of accused products and use of the Garmin Connect web services. (Higgins Decl., ¶10, Exh. E.) Pacing further explained that these responses would be relevant to proving Pacing's induced infringement claim and damages. (*Id.*)

On January 4, 2013, during a second meet and confer telephone call, Pacing was allowed to speak with Garmin's Information Technology department representative to further identify the types of information available in the Garmin Connect database.[1] (Higgins Decl., ¶11.) Garmin's representative indicated that the list of users' names and email addresses from Garmin Connect's database could easily be provided in an Excel spreadsheet or comma-separated value file format. (*Id.*)

On January 11, 2013, Pacing suggested that Defendants provide users' language preference and a latitude/longitude point, which Garmin indicated is information supplied by users, so Pacing could identify customers in the United States. (Higgins Decl., ¶12.)

---

[1] Pacing has sought more that just names/email information from Defendants' Garmin Connect database; the parties are currently working out the details of that discovery. Pacing has or will be serving additional discovery requests concerning Garmin Connect database.

138531.00601/95123305v.2                                4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

On January 15, 2013, Defendants asserted that the Garmin Connect users' names and email addresses are protected from disclosure pursuant to California privacy laws and federal and state constitutions. (Higgins Decl., ¶13, Exh. F.) Defendants also asserted that names and emails are not relevant to the infringement issues in this case and it would be unduly burdensome for Defendants to determine which of its users used accused products. (*Id.*)

On January 22, 2013, during a third meet and confer conference call, the parties attempted to resolve this discovery dispute, however no resolution was reached. (Higgins Decl., ¶14.)

## III.   ARGUMENT

### A.   Gamin's Customer's Names and Email Addresses Are Unquestionably Discoverable and Relevant to Pacing's Induced Infringement Claim, as Well as the Level of Damages

To establish induced patent infringement under 35 U.S.C. §271(b), a plaintiff must show (1) a third party actually infringed plaintiff's patent; (2) the defendant knew of the patent; and (3) the defendant knowingly induced the infringing acts with intent to encourage infringement by the third person. See *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). "Evidence of active steps taken to induce infringement, such as advertising an infringing use, can support a finding of an intention for the product to be used in an infringing manner." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 345 U.S. 913, 932 (2005).). As shown in the excerpt above from Pacing's First Amended Complaint, Pacing alleges indirect infringement based on Garmin's customer's direct infringement. Thus, evidence related to customer's direct infringement is certainly relevant to this case. As discussed below,

138531.00601/95123305v.2                        5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY

3:12-CV-01067 BEN (WMc)

Defendants should be compelled to produce the names and locations (physical addresses, or preferably email address[2]) of Garmin Connect users so that Pacing can obtain direct evidence establishing Garmin's customers direct infringement of the patent-at-suit.

*First*, FRCP 26(b) unquestionably provides for the production of the "identity and location of persons who know of any discoverable matter." Here, "identity" means the names and emails of Defendants' customers. There can be no doubt that direct infringers of the patent-in-suit "know of [ ] discoverable matter" because, for example, those customers know which accused products they purchased and when, and whether they used Garmin Connect web services in a manner set forth in Plaintiff's First Amended Complaint and Preliminary Infringement Contentions. Such discoverable matter and information exist only in the minds of Garmin's customers, information Garmin has effectively admitted it does not have. Customers are likely to know, among other things, which accused products were used in connection with Garmin Connect, how they used the accused products in connection with Garmin Connect, whether they purchased accused products because of patented features, and whether customers purchased accused products in response to Defendants' advertising, promotion, marketing, websites, owner manuals, etc. Request for Production No. 7 and Interrogatory No. 4 were served on Garmin specifically to obtain that sort of direct evidence. If the Court denies the present motion, Pacing will be left without direct evidence of customer's direct infringement of the patent-in-suit.

*Second*, the requested customer information is "reasonably calculated to lead to the discovery of admissible evidence" concerning Defendants' induced infringement.

---

[2] Pacing understands that Garmin collects address information from customers who register their purchases with Garmin; collects location information in the form of latitude/longitude coordinates; and collects email address for customers who use Garmin Connect web services.

138531.00601/95123305v.2                                6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

FRCP 26(b)(1). For example, customer information is expected to generate information about actual uses of specific accused products, and demand, by customers, for the patented features of the asserted claims, which is relevant to the question of damages.

*Third*, requiring parties to produce customer information in patent litigation cases is widely accepted. *See Kilopass Tech. Inc v. Sidense Corp.*, 2012 U.S. Dist. LEXIS 47865, *2-13 (N.D. Cal. 2012) (explaining that customer information is discoverable and necessary for plaintiff to establish indirect infringement); *Crane Plastics, Co., et al. v. Louisiana-Pacific Corp.*, 119 F.Supp.2d 749, 753-754 (S.D. Ohio 2000) (explaining that information about customers is reasonably calculated to lead to the discovery of relevant information, including the way in which products are advertised to customers and how customers have actually installed and used products); *Ropak Corp. et al. v. Plastican, Inc.*, 2006 U.S. Dist. LEXIS 19912, *7-8 (N.D. Ill. 2006) (requiring production of customer lists with names, dates and addresses); *Tama Plastic Industries v. Pritchett Twine & Net Wrap, LLC, et al.*, 2013 U.S. Dist. LEXIS 9607, *17-19 (D. Neb. 2013) (granting plaintiffs' motion to compel production of customer lists).

*Fourth*, Pacing has offered to minimize the production burden on Garmin by limiting the scope of Request No. 7. Not only did Pacing accept Defendants offer to inspect and copy the database records itself, Pacing offered to limit production to the names/emails of those customers who told Garmin their "preferred language" is English and who have latitude/longitude information in the respective accounts pointing to a location in the United States.

///

///

///

### B. None of Defendants' Reasons For Withholding Customer Information Outweigh Rule 26's Mandate to Produce

Although Defendants previously agreed to allow Pacing to inspect and copy its Garmin Connect database, Defendants have since raised a slew of questionable and speculative reasons for withholding customer information from Pacing, arguing that its website privacy policy, federal and state constitutions, impacts on business, lack of relevance, and burden to produce justify doing so. Each of those reasons, however, can easily be rebutted.

*First*, privacy issues under the federal Constitution have been interpreted to be limited to certain private matters, none of which are implicated here.

*Second*, Article 1, Section 1 of California's Constitution, which identifies privacy as an "inalienable right," has been narrowly interpreted to apply to governmental and nongovernmental intrusion to prevent, among other things, "the *overbroad* collection and retention of *unnecessary* personal information..." See *Wilkison v. Times Mirrors Corp.*, 215 Cal.App.3d 1034, 1040-1042 (1989) (quoting *White v. Davis*, 13 Cal.3d 757, 775 (1975)) (emphasis added). No such issues are present here. Pacing seeks customer information because that information is necessary for Pacing to obtain direct evidence in support of its induced infringement claim against Defendants. Moreover, as discussed previously and below, Pacing has offered to reduce the scope of its Request No. 7, so the production will not be overbroad.

*Third*, California Civil Code sections 1798.80 to 1798.81.5, which impose a duty on businesses to maintain reasonable security procedures to protect "personal information" of its customers who are California residents (Cal. Civ. Code §§1798.80, 1798.81.5), defines personal information to include customers' names *in combination with* the their respective social security number, driver's license number, account

138531.00601/95123305v.2                         8

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

number/credit card number/debit card number, and/or medical information *See id.* at §1798.81.5(d)(1). Pacing is not seeking any of that additional information.

*Fourth*, Garmin's web site Privacy Policy explicitly provides that Garmin can share users' personal information with third parties when "it is required to do so by law; such as in response to a court order or subpoena" or with users' consent (http://connect.garmin.com/privacy). Clearly, producing names and emails would not violate the privacy policy were the Court to order Garmin to produce that information in response to the instant motion. Moreover, Pacing previously offered to treat the information in accordance with the stipulated Protective Order already in place (for example, the information could be marked confidential and "Attorneys Eyes Only" pursuant to the Protective Order).

*Fifth*, regarding Garmin's suggestion that it cannot determine which of its users actually used an accused product and, therefore, it would be burdensome or impossible to produce those names/emails, no evidence has been produced by Garmin establishing such a burden would be unreasonable. Moreover, Pacing offered to assume the task of identifying users of the accused products, relieving Garmin of its burden. Moreover, Garmin previous stated that once a user uploads data from a Garmin device, the Garmin Connect system identifies which device was used, a fact clearly inconsistent with the "impossible" allegation raised by Defendants.

*Sixth*, regarding Garmin's "chilling effects" argument, the only case cited by Garmin during meet and confer discussions was *Echostar Satellite LLC v. Freetech Inc.*, which Garmin relies on for the position that a survey "*could lead* to the perceived harassment of legitimate users and a concomitant chilling effect on the purchase and lawful use" of Garmin Connect and Garmin products. *Echostar Satellite LLC v. Freetech Inc.*, 2008 WL 4460236, at *2 (N.D. Cal Sept. 29, 2008) (emphasis added). But the substantive law in that case involved the Digital Millennium Copyright Act

138531.00601/95123305v.2                             9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

and Communications Act, not patent law. Moreover, the *Echostar* court noted differences between surveys (in particular, trademark survey), which properly seek probative evidence directly related to the parties' respective burdens of proof, and what Echostar was proposing, i.e., sending subpoenas to third party customers to seek information that was not directly relevant to the party's burdens of proof under the DMCA and Communications Acts. Finally, Gamin's unsubstantiated belief that some customers might perceive a survey from Pacing as harassment is pure speculation. As discussed below, a survey would be less intrusive compared to receiving a subpoena (which, if this motion is denied, would be Pacing's only alternative to seeking the direct evidence that is available from Garmin's customers).

    **C.    Despite Garmin's Objections, Pacing's Survey is Unquestionably the Best Approach to Efficiently Gathering Evidence of Induced Infringement in This Case**

Pacing's survey will be conducted as follows. First, an email will be sent to the email addresses produced by Garmin, each email using the individual's name (no other customer's name or email address will be visible). (Higgins Decl., ¶16.) The email will invite certain individuals to voluntarily respond to a survey, which will be available via a link embedded in the email. (*Id.*) If an email recipient chooses to participate, they would click on the link. (*Id.*) At that point, a website would then be displayed on the user's device using the user's browser software. (*Id.*) After providing their responses, the user would then click a "Submit" button, and the survey would be concluded. (*Id.*)

Surveys are allowed in patent infringement cases, just as they are in trademark infringement cases. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856-57 (Fed. Cir. 2010) (explaining that "a survey designed to estimate the amount of infringing use... had a sufficient nexus to the relevant market, the parties, and the alleged

138531.00601/95123305v.2    10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY

3:12-CV-01067 BEN (WMc)

infringement," and affirming the reliance on survey results to support an assessment of damages).

During the February 4, 2013, teleconference with His Honor, Judge McCurine, concerning this discovery dispute, the Court stated that while Pacing is entitled to conduct a survey, a general consumer survey would be a more appropriate to show "likelihood of confusion". (*See* Higgins Decl., ¶15.) Such general consumer surveys, while certainly useful in trademark infringement cases, would yield no useful results relevant to direct patent infringement by specific individuals. What is relevant in this case is what actual customers think and what they did, not the general populations' experience with the accused instrumentalities. See *Kilopass Tech. Inc.*, 2012 U.S. Dist. LEXIS at*2-3 ("In order to establish Sidense's indirect infringement, Kilopass is required to establish direct infringement by Sidense's customers.) To obtain evidence regarding Garmin Connect users, Pacing must be allowed to contact those users.

Unlike users of certain products with widespread popularity such as Microsoft Word or Apple iPhones, Garmin Connect users represent such a discrete portion of the population in the United States that it is virtually impossible for Pacing to conduct a general consumer survey of the public to isolate users with discoverable information. Indeed, by Defendants' own assertion, Garmin Connect users are located across the country. Conducting a general survey with a hope of at least finding one user would be akin to looking for needles in a haystack. Such a heavy burden should not be imposed on Pacing where the information sought is discoverable under the FRCP through a more efficient means—a direct customer survey.

As discussed above, FRCP 45 provides a procedure by which Pacing could use subpoenas to obtain direct evidence from Garmin Connect users related to Pacing's infringement claim, where such evidence is not discoverable directly from Defendants. Sending subpoenas to even a few users, however, would be more

138531.00601/95123305v.2                                11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND RESPONSE TO INTERROGATORY
3:12-CV-01067 BEN (WMc)

intrusive to the users, expensive for both parties, and require a significant amount of the court's resources. A survey, on the other hand, sent to Garmin Connect users, would be comparatively much less intrusive and intimidating.

In addition, through a survey, Pacing would be able to obtain information needed to establish its claims similar to what it would obtain through subpoenas. Survey information will also reveal facts relevant to the issue of damages at issue in this case (as noted above, survey results can provide an indication of the number of Garmin Connect users that have used the accused products in an infringing way, as well as indicate whether the patented features embodied in the accused instrumentalities formed a basis for consumer demand for those products). While Garmin Connect users who receive the survey email may ignore it by choice or because it does not apply to them, those same users would be legally required to respond to a subpoena. A survey would allow Pacing to obtain much if not all of the discoverable information it is entitled to have without going through the time and expense of subpoenas. As such, the use of a survey versus issuing subpoenas to Garmin Connect users is the most efficient and economical and least intrusive means of obtaining the same results to establish Pacing's claims.

///
///
///
///
///
///
///
///
///

138531.00601/95123305v.2                                  12

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSE TO INTERROGATORY

3:12-CV-01067 BEN (WMc)

## IV. CONCLUSION

For the foregoing reasons, Pacing respectfully requests that the Court grant this Motion to Compel in favor of Pacing and require Defendants to produce the names, and any location information and email addresses, of Garmin Connect users. Pacing further respectfully requests that the Court allow Pacing to conduct its email survey as described above.

DATED: February 15, 2013            BLANK ROME LLP


By:   \s\ Dennis M. P. Ehling
        Dennis M.P. Ehling
Attorneys for Plaintiff
PACING TECHNOLOGIES, LLC
Email: Ehling@blankrome.com