UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACING TECHNOLOGIES, LLC,<br><br>              Plaintiff,<br>v.<br><br>GARMIN INTERNATIONAL, INC.<br>AND GARMIN, USA, INC.,<br><br>              Defendants. | Case No. 12-CV-1067 BEN (WMc)<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL; and (2) GRANTING MOTIONS TO SEAL**<br><br>[ECF Nos. 106, 107, 115 and 121.] |

## I. INTRODUCTION AND FACTUAL BACKGROUND

On July 10, 2013, Defendant Garmin International, Inc. ("Garmin") filed a motion to compel documents withheld from production by Plaintiff Pacing Technologies on the basis of the attorney-client privilege. [ECF No. 107.] On July 22, 2013, Plaintiff filed its opposition brief. [ECF No. 111.] On July 30, 2013, Defendant filed its reply in support of the motion to compel. [ECF No. 112.] The Court also allowed supplemental briefing from both parties. [ECF Nos. 117, 123.] After careful consideration of the parties' briefing and supporting exhibits, the Court **GRANTS** Defendant's motion to compel for the reasons detailed herein.

### A. Plaintiff's Voluntary Production of Privileged Documents

On June 14, 2013, Pacing produced copies of six draft patent applications prepared by the inventor of the '843 patent, William Turner, and his law firm, Blank

Rome, *as well as* copies of privileged communications between Mr. Turner and Blank Rome concerning Mr. Turner's review of the various draft patent applications. The draft applications disclosed by Pacing are versions of what was ultimately filed with the United States Patent and Trademark Office ("USPTO").

The attorney-client communications also disclosed by Pacing reveal Mr. Turner's detailed commentary and questions about the draft patent application and include his attorney's answers and advice in response to Mr. Turner's observations. The attorney-client communications also discuss filing requirements of the USPTO. Specifically, the communications Pacing voluntarily disclosed include: (1) August 5, 2005 draft patent application; (2) August 23, 2005 list of questions and comments regarding the draft application prepared by Mr. Turner; (3) August 30, 2005 email from Mr. Turner with an edited version of the draft application; (4) August 31, 2005 responses to Mr. Turner's questions and comments; (5) September 26, 2005 draft patent application; (6) October 6, 2005 as-filed patent application; and (7) October 6, 2006 email to Mr. Turner regarding patent application fees and requirements. *See* Pacing's Confidential Third Supplemental Response to Defendant's Interrogatory No. 2, dated June 18, 2013 attached as Exh. 7 to Wu Declaration in support of Garmin's Motion to Compel.

Pacing asserts it voluntarily produced these documents in order to demonstrate Mr. Turner exercised reasonable diligence from August 4, 2005 until October 6, 2005, which is the time period Pacing contends its invention was conceived and constructively reduced to practice until the filing of a patent application with the USPTO in October of 2005.

**B. The Withheld Documents at Issue**

The documents withheld on grounds of attorney-client privilege which Garmin seeks to compel are as follows:

● **PacingPriv1116-1124 (December 21, 2004) and Pacing Priv837-857, 858-878 (July 1, 2005).** These two communications consist of an 8-page PowerPoint

presentation and a 40-page PowerPoint presentation from Mr. Tuner to Blank Rome concerning the Invention. Specifically, PacingPriv1116-1124 (December 21, 2004) is described in Pacing's privilege log as "PowerPoint [p]resentation requesting legal advice regarding invention." Pacing Priv837-857, 858-878 (July 1, 2005) is described in the privilege log as "PowerPoint [p]resentation prepared for atty. and discussed for purpose of seeking legal advice regarding invention."

⚫**PacingPriv1649-1650 (January 10, 2005) and PacingPriv 464-469 (January 19, 2005).** These two documents consist of correspondence between Mr. Turner and Mr. Higgins and between Mr. Turner and Mr. Wigman regarding the invention. In Pacing's privilege log, the PacingPriv1649-1650 (January 10, 2005) document is described as "[e]mail discussing invention." PacingPriv 464-469 (January 19, 2005) is described as "[l]etter reflecting legal advice regarding invention."

⚫**Pacing Priv1648 (April 6, 2005).** This document is an email from Mr. Higgins to Mr. Wigman regarding a search report about the invention. Specifically, Pacing Priv1648 (April 6, 2005) is described in Pacing's privilege log as "[e]mail discussing search report."

⚫**PacingPriv831-836 (July 3, 2005) and PacingPriv32-35, 35-36 (July 10, 2005).** These two documents consist of an invention description from Mr. Turner to Mr. Higgins and an email to Mr. Wigman attaching an invention disclosure form. In Pacing's privilege log, the PacingPriv831-836 (July 3, 2005) document is described as "[i]nvention description shared to obtain legal advice." PacingPriv32-35, 35-36 (July 10, 2005) is described as "[e]mail seeking legal advice concerning and attaching invention disclosure for patent application."

⚫**PacingPriv980-1026 (undated) and PacingPriv103-106 (July 26, 2005).** These documents consist of communications between Mr. Turner and his law firm, Blank Rome which discuss business strategy and third party websites. Specifically, PacingPriv980-1026 is described in Pacing's privilege log as "[h]andwritten notes on

patent application copy and third party websites regarding invention shared with Atty. for purposes of seeking legal advice." PacingPriv103-106 (July 26, 2005) is described in the privilege log as "[e]mail seeking legal advice concerning business strategy for invention."

● **PacingPriv303 (October 17, 2005) and Pacing Priv304-306 (October 24, 2005).** These documents consist of communications between Mr. Turner and his law firm, Blank Rome which discuss the patent application and third-party products. In Pacing's privilege log, the PacingPriv303 (October 17, 2005) document is described as "[l]etter providing legal advice concerning prosecution of patent application." Pacing Priv304-306 (October 24, 2005) is described in the privilege log as [e]mail trail to/from W. Turner seeking/providing legal advice regarding patent application and third party products."

**II. ARGUMENTS**

**A.    Defendants' Motion to Compel Additional Privileged Documents in light of Plaintiff's Voluntary Disclosure and Resultant Subject Matter Waiver**

Defendant argues the attorney-client privilege as to the eleven documents it seeks has been waived because the documents share the same subject matter as voluntarily produced attorney-client privileged documents and draft patent applications Plaintiff provided to Defendants in order to demonstrate a priority[1] date for its patent application that *predates* the September 19, 2005 filing date of Defendant's patent application (Garmin's '206 patent). Defendant argues the subject matter of the waiver should encompass materials that concern the evolution of the invention *before* August 4, 2005 and two weeks *after* October 6, 2005 because these documents may reveal Mr. Turner had not yet conceived of the invention in its entirety by August 4, 2005 and therefore did not file a patent application with the

---

[1] Priority of invention. 1. Patents. The determination that one among several patent applications, for substantially the same invention, should receive the patent when the U.S. Patent and Trademark Office has declared interference. This determination depends on the date of conception, the date of reduction to practice, and diligence. Black's Law Dictionary 1313 (9th Ed. 2009).

USPTO until October 6, 2005.

After taking the deposition of William Turner on August 16, 2013, Garmin also argues the attorney-client privilege as to communications occurring before creation of the August 4, 2005 draft patent application must be waived because: (1) those earlier communications between Mr. Turner and his attorneys led to the drafting of the August 4, 2005 patent application; and (2) Pacing will rely on Mr. Turner's testimony concerning that earlier time period to support its August 4, 2005 conception date.

**B.     Plaintiff's Opposition to Further Disclosure**

Plaintiff argues none of the privileged documents sought by Defendants relate to the August 4, 2005 conception date of the '843 Patent and are, therefore, outside the scope of the subject matter waiver. Plaintiff urges the Court to define the subject matter of the waiver as: (1) metadata evincing the time and date of the draft patent applications; (2) questions, comments and responses to the draft patent applications; and (3) formalities associated with the USPTO filing of Pacing's patent application. Plaintiff also claims it does not intend to rely on any of the material found in the eleven documents at issue to establish conception, reasonable diligence or reduction to practice.

**III. STANDARD OF REVIEW**

Waiver of the attorney-client privilege may occur "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Phoenix Solutions, Inc. V. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) (citing *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996)). Federal Rule of Evidence 502(a) provides the standard of review for determining the scope of waiver where there has been voluntary disclosure:

**Rule 502. Attorney-Client Privilege and Work Product; Limitations on Waiver**

The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.

**(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver *extends to an undisclosed communication* or information in a federal or state proceeding *only if*:

> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** they ought in fairness to be considered together.

Fed. R. Evid. 502(a). (emphasis added.)

## IV. DISCUSSION

There is no dispute among the parties as to whether a voluntary disclosure of privileged documents[2] has occurred. The stumbling block for the parties comes in determining the parameters of a waiver, if any, of other privileged documents which Garmin contends concern the same subject matter as the voluntarily disclosed documents, but have been withheld by Pacing.

The Court has reviewed the privileged communications Pacing voluntarily provided to Garmin to establish a priority date for its patent application that *predates* the filing date of Garmin's '206 patent. The subject matter of these voluntarily

---

[2] In general, "confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L.Ed.2d 39 (1976). The party asserting the privilege bears the burden of establishing it applicability." *Cencast Servs., L.P. v. United States*, 91 Fed. Cl. 496, 502 (2010).

disclosed communications reveals an invention in the process of being readied for filing with the USPTO by an inventor and his patent attorneys. Through this disclosure, Pacing has provided more than mere temporal data such as a computerized time stamp indicating the time the draft patent application was started, revised or completed. The disclosed communications between inventor William Turner and the attorneys at Blank Rome discuss substantive clarifications and revisions made to the draft patent application in the month of August of 2005. The Court rejects Garmin's attempt to broaden the subject matter of the voluntarily disclosed documents to inventorship in order to gain access to a larger universe of privileged documents. Who invented the patent is not an issue arising organically from the subject matter of the attorney-client privileged documents that discuss the August 4, 2005 draft patent application. Accordingly, the Court has determined the subject matter of the voluntarily produced documents goes to diligence and reduction to practice of the concepts articulated in the August 4, 2005 patent application.

Nevertheless, it is against the purpose of Rule 502(a) to allow Plaintiff to selectively choose and dispense those documents it believes support its position in establishing an earlier priority date. *See Theranos, Inc. v. Fuisz Technologies*, Ltd. 2013 WL 2153276 *4 (N.D. Cal.) (explaining "Fuisz Technologies cannot rely on the waiver as a means to shield other relevant communications from the same subject matter that Fuisz willingly disclosed. Fuisz may have chosen a representative sample of communications or he may have cherry-picked selective communications that are favorable to him. The court cannot tell which was Fuisz's motivation, and that is why disclosure is necessary.") On this issue, the Advisory Committee Notes to Rule 502(a) state:

> "The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. *See e.g. In re United Mine Workers of America Employee Benefit Plans Litig.,* 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of

work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."

Fed.R. Evid. 502(a) advisory committee's note.

The Court does not have enough information before it to decide whether Plaintiff attempted to gain an *unfair or misleading* advantage over Garmin by producing the collection of documents it did produce. Nevertheless, it is clear from the briefing that Pacing intended to use the August 4, 2005 draft application and communications discussing that draft as a sword to establish a priority date predating the filing date of Garmin's '206 patent. Thus, fairness dictates that documents showing the preparation and finalization of the August 4, 2005 draft patent application must be produced because they share the same subject matter as the attorney-client privileged communications voluntarily disclosed by Plaintiff and present an accurate history of the subject patent application's development and completion. The August 4, 2005 draft patent application did not spring, ready-made, into Blank Rome's computer file. The Court's *in camera* review of disputed documents revealed preparation of the August 4, 2005 draft began in July of 2005. In keeping with Rule 502(a)'s intent[3] to promote a balanced and complete presentation of evidence, **the Court orders the documents below be produced by Pacing because they are directly related to the preparation, finalization and filing of the August 4, 2005 draft patent application**. <u>Plaintiff is also instructed that the following documents shall be used only to demonstrate the date of</u>

///

///

///

---

[3] "The language concerning subject matter waiver-'ought in fairness'-is taken from Rule 106 because the animating principle is the same. Under both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Fed. R. Evid. 502(a) Advisory Committee's note.

preparation, finalization and filing of the subject patent for the purpose of establishing priority in time vis-a-vis Defendant's filing.

    **1. PacingPriv32-35, 35-36 (July 10, 2005);**

    **2. PacingPriv103-106 (July 26, 2005);**

    **3. PacingPriv831-836 (July 3, 2005); and**

    **4. Pacing Priv837-857, 858-878 (July 1, 2005)**

The remaining seven documents identified and sought by Garmin in its motion to compel are outside the subject matter of the documents voluntarily disclosed by Pacing and are unnecessarily overbroad in that they are neither related to the preparation of the August 4, 2005 draft patent application, nor to its finalization for filing with the USPTO. Accordingly, they need not be disclosed.

## V. CONCLUSION AND ORDER THEREON

In accordance with this Court's Order, Garmin's motion to compel is **GRANTED IN PART and DENIED IN PART.** Specifically, counsel for Pacing shall produce the following documents to Garmin **no later than September 20, 2013.**

    1. PacingPriv32-35, 35-36 (July 10, 2005);

    2. PacingPriv103-106 (July 26, 2005);

    3. PacingPriv831-836 (July 3, 2005); and

    4. Pacing Priv837-857, 858-878 (July 1, 2005).

**IT IS FURTHER ORDERED** that the following motions to file under seal, at **ECF No. 106, ECF No. 115 and ECF No. 121**, which were submitted in support or in opposition to Garmin's motion to compel, are **GRANTED.**

**IT IS SO ORDERED.**

DATED: September 5, 2013

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court